HANZ and others, Appellants, v. INDUSTRIAL COMMISSION and others, Respondents.

*April 10—May 5, 1959.*

For the appellants there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Richard P. Tinkham.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

Brown, J. The only question is whether there is credible evidence to support the commission's finding that Nigbor was the employee of Hanz at the time he received the injury which caused his death. If there is such evidence, in the absence of fraud, the finding is conclusive upon the court and the finding must be sustained. Sec. 102.23, Stats. When facts are not in dispute but permit the drawing of different inferences therefrom, the drawing of one such permissible inference by the commission is an act of fact finding, and the inference so derived constitutes a finding of an ultimate fact, not a conclusion of law. *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 70, 56 N. W. (2d) 525.

There is little dispute in the facts. Marmet is a manufacturer in Wausau and has frequent occasion to use motor vehicles to transport its products and materials. The brothers Hanz, also of Wausau, own and operate a fleet of trucks and trailers. Marmet and Hanz entered into an

agreement whereby Hanz leased a vehicle to Marmet. The lease contained provisions that Marmet would—

". . . assume and exercise complete direction, management, and supervision, and responsibility for said motor vehicle. . . .
". . . the lessee shall only operate said vehicles with competent, capable drivers and who shall be compensated for their services as drivers by the lessee; that the lessee shall pay all social-security taxes, bonding fees, workmen's compensation, and unemployment insurance with respect to said drivers."

Lessee was to pay 19 cents a mile rental fee, and lessor was to pay for all fuel, oil, permits, taxes, and equipment necessary for the operation of the vehicles.

Hanz puts great reliance upon a letter from the public service commission which approved the lease of this vehicle if, and only if, it was to be operated by Marmet's employees and the drivers would be under the exclusive jurisdiction and control of Marmet. This letter is quite inconclusive in determining whether the operator was in fact Marmet's employee rather than Hanz's. The public service commission, itself, cautioned Marmet against the interpretation which Marmet now gives it, for the letter says:

"However, the facts of the operation, rather than the terms of the written instrument, will determine whether the leasing arrangement results in unlawful transportation for compensation."

In *Montello Granite Co. v. Industrial Comm.* (1938), 227 Wis. 170, 183, 278 N. W. 391, we said:

"It has been held over and over again, that, in determining the status of a person who seeks compensation, it is proper not only to consider all of the writings which attempt to define the status of the parties, but also all of the surrounding circumstances in order correctly to ascertain the exact

relation which has resulted from the dealings between the parties. *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117; *Kneeland-McLurg Lumber Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199; *Heineman Lumber Co. v. Industrial Comm.* 226 Wis. 373, 276 N. W. 343."

And in *Schmidlkofer v. Industrial Comm.* (1953), 265 Wis. 535, 539, 61 N. W. (2d) 862, the court reiterated the rule, saying:

"Writings attempting to define the status of parties are important as evidence, but they are not controlling."

A different rule would enable employers to modify at will the effect of the Workmen's Compensation Act as the trial court pointed out.

Hanz asserts that Nigbor agreed to drive the rented vehicle *as the employee of Marmet*. This statement is disputed. We find in the record that Nigbor, who was one of Hanz's regular drivers, consented to *drive* the unit but we do not find that Nigbor consented to leave his employment with Hanz and become the employee of Marmet. This becomes pertinent for—

" 'It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship.' " *Braun v. Jewett* (1957), 1 Wis. (2d) 531, 537, 538, 85 N. W. (2d) 364, quoting with approval *Rhinelander Paper Co. v. Industrial Comm.* 206 Wis. 215, 217, 239 N. W. 412.

Again, in *Edwards v. Cutler-Hammer, Inc.* (1956), 272 Wis. 54, 56, 74 N. W. (2d) 606, the court said:

"In the first place, in order that the general employer be relieved from liability and the special employer become liable,

there must be a consensual relationship between the employee and the borrowing or special employer."

In the actual operation of the leased vehicle the trial court noted these evidentiary facts, which we find are substantiated by the record:

". . . Nigbor was hired by Hanz Trucking Company and it was his usual and regular employment; also carried on their pay roll and was paid by them; that Nigbor's social-security and withholding tax were deducted by them; that Nigbor was carried by them on their compensation reports; that Nigbor was ordered by Hanz Trucking Company to drive the unit in transporting material for Marmet Corporation. The evidence also shows that Hanz Trucking Company controlled Nigbor while he drove the unit. It shows that usually one of the Hanz brothers drove the unit from their yard to Marmet Corporation yard for loading and returned it to the Hanz Trucking Company yard when ready for a trip, and that then Nigbor was ordered by said Trucking Company to proceed on the journey. The evidence further shows that on the day in question the Hanz Trucking Company had ordered Nigbor to first go or stop at Milwaukee to have the truck repaired. It had also instructed him and all drivers to take the best routes; also when and where to go; also gave orders what to do if a truck broke down and in fact gave all necessary orders as a general employer and had the sole right of discharge."

These details of operation well support the finding of fact that Nigbor remained the employee of Hanz, particularly in the absence of evidence which the commission was bound to accept that Nigbor consented to accept Marmet as his employer in the place of Hanz.

Hanz raises an additional question to be settled now, as follows:

"In any event, and regardless of what determination may be made on the question of whose 'employee' Nigbor was at the time of the accident, it is plaintiffs' position that, as between Hanz and Marmet, they have agreed that Marmet

shall bear the ultimate burden of workmen's compensation payments arising out of the operation of the leased unit during the terms of the lease. The written lease expressly stated that 'lessee shall pay all . . . workmen's compensation . . . with respect to said drivers.'

"How could any agreement be plainer?"

Even if Hanz correctly interprets the lease, the interpretation and enforcement of contract rights between lessor and lessee do not come within the powers delegated to the Industrial Commission by the Workmen's Compensation Act. The commission rightly ignored that question. Likewise a court review of the commission's findings and award does not include that question when the commission has not dealt with it. If appellant believes himself to have a contract right to reimbursement his remedy is before a different tribunal in a different proceeding. Appellant's question must remain unanswered on this appeal.

*By the Court.*—Judgment affirmed.