RUFF, Plaintiff and Respondent, v. BURGER, d/b/a BURGER CONSTRUCTION COMPANY, Defendant and Appellant: REYNOLDS and another, d/b/a REYNOLDS BROTHERS, Defendants and Respondents.

*September 8—October 4, 1966.*

For the defendant-appellant there was a brief by *Donald J. Harman* and *Johns, Pappas & Flaherty* of La Crosse, and oral argument by *Mr. Harman*.

For the plaintiff-respondent there was a brief by *Roger L. Hartman* of Alma, and *Fugina, Kostner, Ward, Kostner & Galstad* of Arcadia, and oral argument by *Mr. Hartman*.

For the defendants-respondents there was a brief by *Wilcox & Wilcox* of Eau Claire, and oral argument by *John F. Wilcox*.

HEFFERNAN, J. On review this court only asks whether there is any credible evidence that under any reason-

able view supports the verdict. When the verdict has received the trial court's approval, as in this case, this court on review will look with particular favor upon the verdict if it is supported by any credible evidence. *Schwalbach v. Antigo Electric & Gas, Inc.* (1965), 27 Wis. (2d) 651, 654, 135 N. W. (2d) 263; *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400. Hence, the appellant takes on an onerous burden in seeking a reversal.

### Was there credible evidence that the cows died of electrocution?

The appellant first seeks a reversal on the threshold question that, irrespective of negligence, there was no proof that the cows died by electrocution. The defendant attempted in testimony to raise inferentially the possibility that the death of the cattle might have been the result of disease or trauma unrelated to any conduct of Burger or that the cows did not die until their throats were slashed by the plaintiff. These inferences are speculative, and, even though reasonable, the jury can accept another inference based on credible evidence, and that inference will be supported by the reviewing court. *Hanz Trucking, Inc., v. Harris Brothers Co.* (1965), 29 Wis. (2d) 254, 138 N. W. (2d) 238; *Dickman v. Schaeffer* (1960), 10 Wis. (2d) 610, 616, 103 N. W. (2d) 922.

The circumstances of the cows' death, their propinquity to the cable, the battered condition of the cable, the wet earth and grass, the appearance of the cattle while lying on the cable, the undisputed fact that the cable was energized with electric power at the time of the incident, and the evidence that there was little blood after their throats were cut are all evidence that would support the inference that the cows died of electrocution.[1]

[1] This case is not unlike *Musil v. Barron Electrical Co-operative* (1961), 13 Wis. (2d) 342, 108 N. W. (2d) 652, where the only testimony as to the cause of death of a woman was that she was

*Was there credible evidence to support the jury's verdict that Burger was negligent?*

The rules set forth above also control this question. It was Burger's employees who ran the cable from the pole to the shack. This cable, apparently lightly armored at best, was placed directly on the track where heavy vehicles would almost surely damage it, and the evidence is clear that heavy equipment was run across the cable and the cable was "crimped" and wrinkled up to the extent that a Burger employee thought it necessary to repair the cable with friction tape. Despite the knowledge that the cable had been damaged and the complaints of the plaintiff, nothing was done to change the type of electrical cable or to reposition it out of the path of vehicular travel. It is apparent from the evidence that Burger connected and placed a lightly covered cable across the road and then ran heavy vehicles across the cable that inevitably caused damage to it. The verdict of the jury that Burger was negligent as to the manner of supplying power to the shack and in the manner in which it traveled over the cable is supported by credible

lying dead in the backyard of her house with a wire in both hands and that the attending physician "assumed" her death was due to electrocution. This court there stated, "There was nothing to warrant a contrary assumption." This statement was made in spite of testimony by an experienced electrician who came to the rescue of the woman that, "I could not tell whether or not the wire that was in Mrs. Musil's hand was hot or not at that time." Similarly, there being nothing to warrant a contrary assumption in this case, the conclusion that death was caused by electrocution is supported by the evidence presented. The case at hand is to be distinguished from *Bergeler v. Waukesha Gas & Electric Co.* (1917), 165 Wis. 68, 160 N. W. 1076, which was an action for the value of a horse alleged to have been electrocuted. There the court found the proof of death by electrocution to be insufficient because (1) the cable was in perfect condition, (2) there were other possible sources of electricity, and (3) there was no proof that the horse was in contact with the cable. All of these factors are reversed in this case.

evidence. It is equally apparent that the type of cable negligently furnished and the damage done to it by the negligent abuse of it by Burger's trucks traveling over it lead to the conclusion that this negligence was the cause of the death of the cattle. It is a reasonable inference based upon the evidence that the negligence of Burger resulted in the rupture of the cable and the consequent escape of electrical energy, thus causing the death of the two cows.

*Was there evidence from which the jury could reasonably infer that Reynolds was not negligent?*

The Reynolds company had no part in the supplying of the electric current, and, hence, cannot be negligent in that respect. During 1963, the second year of construction, Reynolds moved equipment down the road and across the cable in the same way that Burger did. However, there is no evidence that Reynolds had any notice of the nature of the cable or that he had been warned by Burger (who, under the contract, was responsible for safety at the site) [2] of the condition of the cable or of its likelihood of rupturing or disintegrating if driven over by heavy vehicles. Reynolds testified that he knew that the cable was there, but he had never been given any information in regard to the cable by Burger, nor had he ever received any complaints from the plaintiff, Ruff. Reynolds had no knowledge of the nature of the cable, nor is there any evidence of any facts known to Reynolds that would impel a reasonable man to make any inquiries in regard to the cable or to adopt any special precautions concerning it. ". . . the individual will not be held to knowledge of risks which are not known or

[2] See *Presser v. Siesel Construction Co.* (1963), 19 Wis. (2d) 54, 59, 119 N. W. (2d) 405, re obligation pursuant to agreement of a general contractor for duty of care and safety over and above common-law negligence.

apparent to him." Prosser, Law of Torts (hornbook series, 3d ed.), p. 162, sec. 32. He may, of course, be engaged in an activity that obliges him to find out what risks exist even if they are not apparent to him. The record, however, is devoid of any evidence that places that responsibility on Reynolds.

The testimony indicated that the dead cows were lying on the places in the cable where damage was done by Burger in 1962, before Reynolds came on the job. Hence, though a jury were to find negligence upon Reynolds, a cause problem would still remain, since the apparent damage preceded any negligence by Reynolds. However, there is credible evidence to support the jury's conclusion that Reynolds was not negligent.

*Was there evidence to support the jury's verdict that the plaintiff was not contributorily negligent?*

The plaintiff had no control over the operations at the site of the dam. Although he had the right to pasture his cattle in the same field where the cable was laid, he testified that he had never traveled over the cable. He did testify that after seeing the damaged condition of the cable he complained to Burger about it. His responsibility in regard to the gate through which the cows strayed was limited to closing the gate when he used it. On the day in question, some of the young cows inexplicably wandered through the open gate and the electrocution resulted. There is nothing in the evidence to show that plaintiff or his son was negligent. The cows were brought home by the usual route in the usual manner, and nothing out of the ordinary occurred until the cows wandered through the open gate. There is credible evidence from which the jury could conclude that the plaintiff was free of negligence.

*Did the conduct of the Buffalo Electric Cooperative
and the federal inspector constitute
intervening causes?*

The appellant also contends that the negligence of Buffalo Electric and the government inspector were intervening causes. The negligence of Buffalo Electric he attributes to the fact that the company reenergized the line after its lineman knew of the difficulty with the cable, and he asserts that the government inspector was negligent in leaving the gate open. The appellant's first obstacle is the jury's specific finding that no person other than Burger was negligent. No negligence has been found in regard to Mr. Pauly, the inspector, or Buffalo Electric. The inspector's responsibility was to leave the gate as he found it. There is no evidence that Pauly opened the gate. The testimony is to the contrary. The record is devoid of any evidence which would sustain a finding of negligence on his part.

While the jury might have concluded that there was negligence on the part of Buffalo Electric, the testimony does not compel such a conclusion. There has not been a showing that the cable was so evidently a hazard that the Buffalo Electric lineman should not have reenergized it and, as a matter of law, was therefore negligent in doing so. The lineman did not conclude that the outage that occurred in 1962 was caused by the cable. He testified that he did not ascertain the cause, and that it could have been lightning. The jury, on the basis of the evidence, could find that there was no negligence chargeable to Buffalo Electric.

Since the jury has found no negligence upon either the inspector or Buffalo Electric, the question of intervening cause is moot. Nevertheless, the negligence that appellant urges here would not appear to constitute an intervening cause in the sense that would insulate him from liability. The intervening causes that appellant

alleges are exactly the types of foreseeable consequences that he should be prepared to guard against as the consequence of his own negligence. It is nonsense to say that the energizing of the cable was an intervening cause that will protect the defendant from liability, when the cable was constructed by the defendant for the purpose of being energized. If there was negligence in the manner in which Burger supplied power to the shack, this was the very hazard to be anticipated. Nor can Burger be exonerated because Pauly left the gate open. It was expected that Pauly would leave the gate open if he found it that way. This, too, was a foreseeable risk, and Burger should not be relieved of his liability as the result of the consequences that he should have anticipated. Prosser, Law of Torts (hornbook series, 3d ed.), pp. 310, 311, sec. 51, states the rule:

"If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances, he may be negligent . . . because he has failed to guard against it . . . ." (p. 311.)

"The question is . . . . whether the intervention of the later cause is a significant part of the risk involved in the defendant's conduct, or is so reasonably connected with it that the responsibility should not be terminated." (p. 310.)

The appellant does not make out a case for negligence as a matter of law against either Buffalo Electric or Pauly, and has not satisfied this court that their conduct is, in fact, an intervening cause (since it is not a superseding cause, *Merlino v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. (2d) 571, 579, 127 N. W. (2d) 741), since such conduct would be a foreseeable result of Burger's negligence. In *Merlino v. Mutual Service Casualty Ins. Co., supra,* page 579, we quoted with approval from Restatement, 2 Torts, p. 1184:

"If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability."

See also *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. (2d) 421, 430, 114 N. W. (2d) 823, and *Schneider Fuel & Supply Co. v. Thomas H. Bentley & Son* (1965), 26 Wis. (2d) 549, 554, 133 N. W. (2d) 254.

We conclude that there is credible evidence to support the verdict of the jury.

*By the Court.*—Judgments affirmed.