CORNWELL, Plaintiff and Respondent, v. ROHRER, d/b/a E. H. ROHRER CHEVROLET COMPANY, Defendant and Respondent: CHICAGO, BURLINGTON & QUINCY RAILROAD, Defendant and Appellant. [Case No. 212.]

TODD COUNTY TRANSFER, INC., Plaintiff and Respondent, v. ROHRER, d/b/a E. H. ROHRER CHEVROLET COMPANY, Defendant and Respondent: CHICAGO, BURLINGTON & QUINCY RAILROAD, Defendant and Appellant. [Case No. 213.]

*January 31—February 27, 1968.*

254

For the defendant-appellant there were briefs by *Moen, Sheehan & Meyer* of La Crosse, and oral argument by *Leon E. Sheehan*.

For the plaintiffs-respondents there were briefs by *Hoerl, Day & Kamps* of Marshfield, and by *Wilcox & Wil-*

cox of Eau Claire, and oral argument by *John D. Day* and *Roy S. Wilcox.*

For the defendant-respondent there were briefs by *Randall E. Morey* and *Whelan, Morey & Morey,* all of Mondovi, and by *Petersen, Sutherland, Axley & Brynelson* of Madison, and oral argument by *Randall E. Morey* and *Eugene O. Gehl* of Madison.

CONNOR T. HANSEN, J. On this appeal, we consider the defendant has presented four issues:

(1) Should the jury have been instructed as to the duty to separate the disabled tractor from the trailer before attempting to tow it across the railroad crossing? Sec. 348.08 (1) and sec. 348.02 (5), Stats.[1]

(2) Was there any credible evidence to support the jury verdict?

(3) Was the statement made by Sawyer to the investigating officer after the accident admissible as part of the *res gestae?*

---

[1] "348.08 **Vehicle trains.** (1) No person, without a permit therefor shall operate on a highway any motor vehicle drawing or having attached thereto more than one vehicle, except that: . . ." (Exceptions not applicable.)

"348.02 **Applicability of chapter.**

"(5) The limitations on weight, length and number of vehicles in combination imposed by this chapter shall not apply to a combination of vehicles in an emergency towing operation in which the towing vehicle is being used to remove a stalled or disabled vehicle or combination of vehicles from the highway to the nearest adequate place for repairs, or in which the towing vehicle is an emergency truck tractor temporarily substituted for a stalled or disabled truck tractor, providing that the limitation on the number of vehicles in combination imposed by s. 348.08 may be exceeded only if the vehicles comprising the towed combination of vehicles cannot reasonably be separated so as to be transported singly, and that the emergency towing operation of a combination of vehicles in excess of statutory limitations on weight, length and number of vehicles in combination is permitted on a freeway only from the place of stalling or disablement on the freeway to the nearest feasible interchange exit from the freeway."

(4) Should a new trial be granted in the interest of justice?

1. The defendant urges that the jury should have been instructed regarding the duty of the tow truck operator to separate the tractor from the trailer under sec. 348.08 (1) and sec. 348.02 (5), Stats., before attempting to tow it across the tracks.

The trial court correctly determined that there was no violation of the aforementioned statutes. It is our opinion, the trial court found, as a matter of law, that an emergency existed and that it would not have been reasonable to separate the tractor-trailer unit. A traffic officer testified this was a heavily traveled two lane state trunk highway. The unit was blocking one lane of traffic and it was nighttime. Also, there is evidence that it was not reasonable to separate a tractor from a livestock trailer when it was heavily loaded.

2. The defendant contends that the negligence of the driver of the unit was at least equal to or greater than that of the defendant.

This is a jury question and therefore the record must be examined within the scope of the oft stated rule which provides:

". . . we must judge the jury verdict in the light of the familiar rules that (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict." *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 349, 139 N. W. 2d 48; *Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 259, 147 N. W. 2d 277.

As stated, the jury apportioned the negligence 75 percent to the defendant railroad and 25 percent to the driver of the unit. The negligence of defendant railroad is predicated upon the maintenance of a hazardous railroad

crossing. There is abundant testimony that the crossing had significant depressions and "potholes" which were a direct result of the repair work. Such testimony was given by the investigating officer, as well as disinterested witnesses. There is testimony that the tractor engine initially stopped functioning while slowly crossing the tracks, which was necessitated because of their rough condition.

The defendant next argues that the driver of the tow truck, Alfred Mikelson, was negligent as a matter of law. This contention is premised upon the following: The tow truck was rather old (1937 Chevrolet), the tow chain was of unknown strength, Mikelson did not inquire about the load being hauled in the trailer, he had knowledge that when trains came through the intersection they did so at great speed, he did not notify the railroad or inquire about the train schedules, and that during their deliberations the jury inquired of the trial judge as to the relationship between Mikelson and his employer.

The jury had ample opportunity to hear the testimony, evaluate its weight and allocate the percentages of causal negligence. There is no act alleged to have been committed by Mikelson which constitutes negligence as a matter of law.

We conclude that the findings of the jury are supported by the evidence.

3. We are next asked to consider whether a statement from Sawyer, driver of the unit, taken about one and one-half hours after the accident, by the investigating officer, while both were seated in the officer's car, should have been admitted into evidence as part of the *res gestae*.

This question is presented primarily because Sawyer was dead at the time of the trial. Sawyer read the statement and said it was correct. The officer testified Sawyer was nervous and cold when Sawyer was asked to sign the statement, and Sawyer indicated he didn't believe he could sign his name. Sawyer was apparently very upset.

The trial court refused to admit the statement because "too long an interval of time had elapsed to bring Sawyer's testimony within the *res gestae* rule."

It is alleged that the statement, if admitted, would have indicated that both the driver of the unit and the driver of the tow truck, were negligent.

In *Rudzinski v. Warner Theatres* (1962), 16 Wis. 2d 241, 247, 114 N. W. 2d 466, this court stated the law of Wisconsin with respect to statements admissible under the concept of *res gestae*:

" 'Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made (a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or (b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains.' "

The trial court is clothed with wide discretion in ruling on the admissibility of a hearsay statement, alleged to be the spontaneous result of a startling event witnessed by the declarant, which is sought to be admitted as part of the *res gestae. Rudzinski v. Warner Theatres, supra,* page 248; *State v. Dunn* (1960), 10 Wis. 2d 447, 457, 103 N. W. 2d 36.

Furthermore, whether a statement is to be considered as a part of the *res gestae* is a question of competency to be determined by the trial court and its ruling must be treated as a verity unless manifestly wrong. *Davis v. Fay* (1953), 265 Wis. 426, 431, 61 N. W. 2d 885. From an examination of the record in the instant case, we can not say that the ruling of the trial court was manifestly wrong.

There is testimony that Sawyer was cold, nervous and upset at the time he gave his statement to the officer in the officer's automobile. However, in view of the time lapse of about an hour and one-half, and considering the wide discretion of the trial court, we agree that the

trial court properly determined the statement was not part of the *res gestae*. There is no showing that Sawyer lacked capacity to review the accident. He did have sufficient opportunity to calculate the effect of any statement which he might make concerning the collision. The statement can not be said to be "spontaneous," "natural," "impulsive," "instinctive," "generated by an excited feeling which extends without let or breakdown from the moment of the event they illustrate." *Pocquette v. Carpiaux* (1952), 261 Wis. 340, 343, 52 N. W. 2d 787.

4. The defendant seeks to have this court invoke the discretionary authority vested in it pursuant to sec. 251.09, Stats., and grant a new trial in the interest of justice.

In support thereof, counsel directs our attention to several alleged errors. These include the failure of the trial court to include instructions as to *res ipsa loquitur* (tow chain) and the failure to warn the defendant railroad about the emergency situation which existed at the crossing. Prejudicial error is also alleged as a result of the argument of plaintiff's counsel to the jury concerning the speed of the train; and the further fact that the jury, after commencing its deliberations, inquired as to the relationship between Mikelson (tow truck operator) and his employer Rohrer Chevrolet Company. However, these alleged errors were not preserved in motions after verdict and are therefore not reviewable as a matter of right on appeal. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. 2d 380.

Furthermore, we do not deem these alleged errors to be prejudicial and, as we have hereinbefore concluded, there is credible evidence to sustain the jury verdict.

This court will not exercise its discretionary power to order a new trial in the interest of justice unless it is convinced that there has been a probable miscarriage of justice—viewing the case as a whole. *Chapnitsky v. McClone* (1963), 20 Wis. 2d 453, 467, 122 N. W. 2d 400. Our view of the record before us does not convince us that

the instant jury verdict probably constituted a miscarriage of justice.

*By the Court.*—Judgment affirmed.