Wills, Individually and as Administratrix of the Estate of Peter J. Wills, Appellant, v. Regan and others, Respondents.*

*No. 246. Argued March 27, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 398.)

---

[4] *See, e.g., Zimmer v. Daun* (1968), 40 Wis. 2d 627, 162 N. W. 2d 626.

* Motion for rehearing denied, with costs, on June 29, 1973.

330

332

For the appellant there was a brief and oral argument by *Edward Rudolph* of Milwaukee.

For the respondents there was a brief by *Ray T. McCann*, attorney, and *Leonard L. Loeb* of counsel, both of Milwaukee, for respondent St. Michael's Hospital, Franciscan Sisters; and *Arnold, Murray & O'Neill*, attorneys, and *Robert C. Watson* of counsel, all of Milwaukee, for respondent Joseph M. Regan, M.D.; and oral argument by *Mr. Loeb* for respondent St. Michael's Hospital, Franciscan Sisters, and *Mr. Watson* for respondent Joseph M. Regan, M.D.

HANLEY, J. Four issues are presented on this appeal:

1. Were several of the instructions given either erroneous or incomplete?

2. Does the evidence establish that defendants were causally negligent as a matter of law?

3. Did the trial court err in making the plaintiff elect at the beginning of trial to proceed in either tort or contract?

4. Should a new trial be granted in the interest of justice?

*Instructions to jury.*

The plaintiff alleges numerous assignments of errors relating to the instructions given by the trial court to the jury. The first such assignment of error is that the trial court's instruction relating to the duty owed by the hospital to the deceased was erroneous and incomplete, contending that the hospital has a duty of care in connection with supervising and reviewing the attending physician's treatment of the patient similar to the type which the Illinois court found to exist in *Darling v. Charleston Hospital* (1965), 33 Ill. 2d 326, 211 N. E. 2d 253, 14 A. L. R. 3d 860, and that the trial court did not so instruct the jury.

Plaintiff is in effect arguing that a different standard should be applied in medical cases so as to change the instructions to the jury. The court met this argument in *Schuster v. St. Vincent Hospital* (1969), 45 Wis. 2d 135, 172 N. W. 2d 421. The plaintiff's contention that a different basis or higher standard of corporate responsibility should be applied was answered in the following language at page 143:

"Although plaintiff urges for the first time on appeal that we adopt a higher standard—one of 'corporate responsibility'—to be applicable to a hospital in its custodial functions, we do not find plaintiff's arguments persuasive and are convinced that the public policy factors governing negligence actions will best be served by requiring the standard of ordinary care."

The instruction actually given by the court regarding the hospital's negligence was Wis J I—Civil, Part I, 1385 as modified which relates to injury resulting from a patient's inability to look out for himself. The instruction as given was proper. On review of the record, it is clear that the only instruction on the hospital's negligence which the plaintiff requested was the one

actually given. Moreover, plaintiff's requested instructions which were submitted to the court were nothing more than several sections of the Wisconsin Jury Instructions—Civil, xeroxed and stapled together, and it is impossible to determine whether it was plaintiff's intent to request something more than what was actually contained there.

This court has recently admonished counsel for the submission of requested jury instructions out of Wis J I—Civil, in the form of xeroxed pages without particularizing the exact nature of the request. In the case of *Holzem v. Mueller* (1972), 54 Wis. 2d 388, 195 N. W. 2d 635, at page 397, the court stated:

"We again point out that the manner in which the plaintiffs submitted their requested instructions resulted in a confusing record. While it is helpful to the judge to provide him with a copy of the page of the pattern instructions which carries with it the decisional annotations, a mere photocopy of the page is insufficient to define what portion of the instruction is requested when the instruction itself is framed in terms of alternatives. The record must show precisely what instruction or what portion of an instruction is requested, or a party on appeal will not be heard to complain that his requested instruction was refused."

Plaintiff's second assignment of error is that the way the instruction was framed the jury was in effect told that if the fall from the commode in the bathroom did not cause the death, the hospital's negligence could not be causal. Although the record discloses that some evidence adduced at trial tended to support the theory that the negligence of the hospital occurred after the fall in the manner in which its employees responded to the increasing symptoms of the deceased, it is difficult to see how the plaintiff can complain in light of the fact that the only instruction on the duty of the hospital which was requested was the one actually given.

Plaintiff next contends that it was error for the trial court to use Wis J I—Civil, Part II, 1580,[1] relating to the comparison of the potential negligence between the doctor and the hospital because of its reference to "blame" and "fault" since both the standard instructions on medical malpractice and hospital negligence Nos. 1023 and 1385 respectively do not employ these terms. The instruction on the comparison of negligence which has been approved as recently as *Lovesee v. Allied Development Corp.* (1970), 45 Wis. 2d 340, 344, 173 N. W. 2d 196 is just as appropriate in a malpractice case as in any other; and the words "blame" and "fault" do not impute to the medical profession any moral responsibility or culpability which is not found in any other case where it is alleged that several parties have not exercised the appropriate standard of care in their respective dealings with a third-party plaintiff.

Plaintiff further contends that the instructions contained language that "other conditions beyond anyone's control may jointly produce death." He alleges this was error since there was no evidence in the record other than the negligence of the defendants which could possibly produce death.

The standard malpractice instruction, Wis J I—Civil, Part I, 1023, which plaintiff requested, in part reads:

"There may be more than one cause of physical damage or disability. The negligence of one person alone

---

[1] "**1580 Comparative negligence: Basis of comparison.** If you answer Question ——— [or this question] you will determine how much or to what extent each person (party) named in the question is to *blame* for the (collision) (accident) (injury) and considering the conduct of the persons (parties) named in the question, considered as a whole, you will determine whether one made a larger, equal or smaller contribution than the other (others). In making your apportionment of negligence you will fix the percentage attributable to each participant in proportion to how much the *fault* of each contributed to cause the (collision) (accident) (injury) and record those percentages." (Emphasis added.)

may produce it, or the acts or omissions on the part of two or more persons, *or other conditions beyond anyone's control, may jointly produce it."* (Emphasis added.)

Plaintiff's apparent objection is that rather than using the word "death" the trial court should have inserted the "state of the deceased's health as it existed on June 13th" when the massive embolism occurred. Plaintiff argues that the negligence operate in an important or significant factor in contributing to the condition which leads to death. The same objection is made with regard to the court's instruction as to causation and to the verdict questions Nos. 2 and 4 which inquired:

"Was such negligence a cause of Peter J. Wills' death?"

Nowhere does it appear that the defendant's xeroxed instructions requested the trial court to make such a change. Moreover, this is an action for wrongful death brought pursuant to sec. 895.03, Stats. Sec. 895.03, provides that:

"Whenever the *death of a person shall be caused by a wrongful act, neglect or default* and the act, neglect or default is such as would, *if death had not ensued,* have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case *the person who would have been liable, if death had not ensued, shall be liable to an action for damages* notwithstanding the death of the person injured; *provided, that such action shall be brought for a death caused in this state."* (Emphasis added.)

Paragraphs 16 and 18 of plaintiff's complaint allege that the negligence of Dr. Regan and the hospital was a substantial factor in causing deceased to "wrongfully die" and indeed, without such allegations no cause of action pursuant to sec. 895.03, Stats., would be stated. We find no merit to plaintiff's contentions relating either to the form of the instruction or the wording of the verdict.

Subdivision (c) of verdict question 6 inquired into the sum of money which will reasonably compensate the estate of the deceased, Peter J. Wills, for pain and suffering sustained as a result of the defendant's negligence. In instructing the jury on this question, the trial court stated:

"In arriving at your answer to this question, you should take into consideration all pain and suffering, all mental anguish and apprehension, sorrow and anxiety which he had undergone. Pain and suffering cannot be computed with mathematical precision, but you should determine upon such sum as will be a fair compensation therefor. *You will answer this question and all other questions relating to damages regardless of how you may have answered any of the other questions of this special verdict.* If you find negligence on the part of either or both of the defendants, you will insert a proper amount as compensation for said pain and suffering. *If you do not find any party negligent, you will insert as your answer to Subdivision (C) of the 6th Question the word 'None.'* " (Emphasis added.)

The plaintiff contends that by so instructing the jury to write in "None" on pain and suffering if no negligence was found, it was in effect telling the jury that negligence which caused pain and suffering is not a part of the case; only negligence which caused death.

In the first instance, the only purpose for making a jury answer the damages question regardless of whether or not negligence or cause is found is to prevent a relitigation of damages in the event error is later applied to the jury's failure to answer the negligence or cause question affirmatively. While it appears that the trial court should not have instructed the jury to write "None" in Question 6 (c) if no negligence was found, particularly in light of its prior statement that this question, like the other damage questions, should be answered regardless of how any of the other questions were answered, this was not prejudicial error since the

jury determined the defendant's negligence not to be causal.

*Question of causation.*

In motions after verdict, the plaintiff moved the trial court to change the jury's answers to the causation questions from "No" to "Yes" and the court denied his motion, approving the jury's findings. On appeal, plaintiff contends that the court should have found as a matter of law that the defendant's negligence was causal.

The standard of review is clearly set forth in *Weber v. Walters* (1954), 268 Wis. 251, 67 N. W. 2d 395, at pages 255, 256.

" 'The rule of law is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is for the jury should be firmly adhered to and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned. *Wisconsin Telephone Co. v. Russell* (1943), 242 Wis. 247, 252, 7 N. W. (2d) 825, and cases there cited.' *Czerniakowski v. National Ice & Coal Co.* 252 Wis. 112, 115, 31 N. W. (2d) 156.

"The fact that the testimony is uncontradicted does not of itself require that the court determine as a matter of law that an act found to have been negligently performed is a substantial factor in bringing about harm to another. Facts reasonably inferable from the evidence may be considered.

" 'Where undisputed facts permit of different inferences a question of fact and not of law is presented.' *Eckhardt v. Industrial Comm.* 242 Wis. 325, 329, 7 N. W. (2d) 841.

" . . .

" . . .

" 'What is proximate cause is ordinarily a question for the jury if the evidence is conflicting or if different inferences can be drawn from it. *Schultz v. Brogan,* 251 Wis. 390, 29 N. W. (2d) 719, and "if the evidence is conflicting or, although not contradictory, is open to two or more reasonable inferences as to what actually took place, the case must be left to the jury." Sec. 434, comment *c,* Restatement, 2 Torts, p. 1172, quoted with approval in *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 233, 55 N. W. (2d) 29.' *Roeske v. Schmitt,* 266 Wis. 557, 568, 64 N. W. (2d) 394."

Likewise, in *Jeffers v. Peoria-Rockford Bus Co.* (1957), 274 Wis. 594, 603, 80 N. W. 2d 785, it is stated:

"Prosser, Law of Torts (2d ed.), p. 281, sec. 50, states that *'where reasonable men could not differ* as to whether the defendant's conduct was, or was not, a substantial factor in producing the result' the determination of the question of causation is for the court; but 'in cases *where reasonable men might differ—which will include all but a few of the cases* in which the issue is in dispute at all—*the question is one for the jury.'* (Emphasis supplied.)"

Under the facts of this case reasonable men could differ as to whether the negligence of the defendants was a "substantial factor" in producing the ultimate death of Peter J. Wills. Dr. Van Hecke, a Milwaukee pathologist, performed an autopsy on the deceased and testified that the medical cause of death was multiple pulmonary embolisms coming from the lung, not the heart, infarct in the brain and bronchial pneumonia and these same conclusions were reached by defendant's expert pathologist. Dr. Van Hecke testified that what probably happened was that after surgery the deceased developed "phlebothrombosis" in his lower extremities and that upon the sudden muscular effort—such as a fall—small parts of the clot let go and these emboli traveled through the bloodstream to the lungs. Although this was described as a not uncommon postoperative

complication, Dr. Van Hecke admitted on cross-examination that the release of these first emboli could also have been caused by standing, the muscular activity involved in walking or toilet effort. The first complaints of chest pain after the fall were probably caused when these emboli reached the lungs. Although this embolism was described as "serious" in and of itself, it was not fatal. The embolism that did in fact cause the death was one which occurred on the morning of June 13th when the deceased executed effort to get into a wheelchair. From this date until his death on June 25th, his condition steadily worsened. Dr. Van Hecke admitted that even if his hypothesis of the chain of events leading to death was correct, it was for the most part based upon the hindsight and sophisticated techniques of an autopsy, both of which are unavailable to a practicing physician who is called upon to react under different circumstances.

The theory advanced by Dr. Van Hecke and the one the plaintiff presented to the jury was that from the time of the fall on June 8th until the massive embolism on June 13th, both Dr. Regan and the hospital were negligent in the manner in which they responded to the postoperative symptoms or that is to say, they were not negligent in making their diagnosis; [2] rather they were negligent in not attempting to make any diagnosis at all when their patient's symptoms clearly called for one. Although the jury did find the hospital negligent in allowing the deceased to fall in the bathroom, Dr. Van Hecke testified that what he believed to be the smaller emboli released on June 9th were not themselves fatal.

The hospital records show that Dr. Regan examined Wills on June 10th and found no lung involvement but did find soreness in the chest and coccyx area. He re-

[2] A physician is not liable for making the wrong diagnosis. *McManus v. Donlin* (1964), 23 Wis. 2d 289, 127 N. W. 2d 22.

viewed an order that the deceased be given Percodan for pain. Plaintiff contended that the development of such clots was not an uncommon postoperative complication and that the symptoms, particularly chest pain and cold feet, should have put Dr. Regan on notice of the small emboli that were traveling through the deceased's bloodstream.

Dr. Enger, the defendant's pathologist, testified that conditions other than an embolism could have produced these symptoms and that in most cases minor symptoms will be unrecognized and undiagnosed as related to embolism. After a week or so of continuous and increasingly worsening conditions, together with the elimination of other possibilities, a doctor would narrow his area of consideration into the zone where pulmonary embolism with infarction assumes a major position. Dr. Enger further testified that the fall of June 8th did not contribute to Mr. Wills' pulmonary complications.

We are of the opinion that the trial court properly held that the question of the causal relationship between the negligence found and the death of Peter Wills was for the jury.

*Pretrial election between tort or contract theory.*

Just prior to trial, the trial court ordered the plaintiff to elect whether to proceed on either the tort or contract theory as set forth in her complaint, but not upon both. At that time, plaintiff contended that the election of which theory should go to the jury is a determination that could be made only after all of the proof was in.

Plaintiff's complaint after setting forth 18 specific acts of alleged negligence on the part of Dr. Regan and 26 specific acts of negligence on the part of St. Michael's Hospital states causes of action against both Dr. Regan and the hospital for breach of contract. After a careful reading of the complaint prior to trial, the trial court

concluded that all of the allegations taken together stated only that the doctor and hospital failed to exercise the degree of care and skill required of them in any malpractice action; namely, to act in a non-negligent way.

Paragraph 14 of the complaint states that:

". . . the services rendered to the deceased by this defendant [Dr. Regan] . . . were different from that expressly agreed to, namely *skillful care and treatment from an orthopedic specialist,* and this breach caused damages . . . ." (Emphasis added.)

Similarly, paragraph 19 of the complaint alleges that the defendant hospital entered into a contract by the terms of which "defendant agreed to furnish the deceased with adequate, safe and proper care and nursing facilities . . . [and] [n]otwithstanding said agreement defendant failed, refused and neglected to provide [them] . . . for deceased's protection after his surgery . . . and instead breached its contract with deceased, causing him to fall . . ."

Although the complaint alleges an express contract with both defendants it sets forth no terms other than what is contained in any implied agreement; namely that the patient will be treated with proper skill and care.

In *Milwaukee County v. Schmidt, Garden & Erikson* (1969), 43 Wis. 2d 445, 453, 168 N. W. 2d 559, it is stated:

"In *Klingbeil v. Saucerman,* this court held that malpractice could sound either in tort or contract. We said:
" '. . . It was stated in *Frechette v. Ravn* [145 Wis. 589, 130 N. W. 453] that an action in tort for malpractice was "plainly one to recover damages for injuries to the person." Why? Because defendant's conduct resulted in an injury to the person of plaintiff. If it did so because of the tort, which consisted in a breach of duty created by law, it is difficult to see why it does not do so when the same identical conduct produces the same

identical result, though the complaint charges the breach of a duty created by contract between the parties instead of the breach of a duty created by law. Damages may flow from the breach of both duties, and likewise an injury to the person may result from the breach of a contract as well as from a tort. *Where, as in malpractice, there is an option to sue in tort or on contract, each cause of action is grounded upon the same identical acts of the defendant, namely, his failure to exercise the proper skill or care, or both.* The very same conduct gives plaintiff his option as to remedies.' (Emphasis added.)

"More recently, in *Suskey v. Davidoff,* this court recognized that an action for malpractice could sound in tort or in contract. Citing the *Klingbeil Case,* the court provided that:

" '. . . The two-year notice requirement was applicable to an action in malpractice . . . *whether sounding in tort or in contract for breach of implied agreement to treat with proper skill and care.*' (Emphasis added.)"

In *Estate of Kohls* (1973), 57 Wis. 2d 141, 203 N. W. 2d 666, at page 144, it is stated:

" '. . . if defendant's conduct, when sued in tort, gives rise to an action for injuries to the person, the very same conduct must give rise to the same kind of action when sued on contract. . . .' *The appellant has an option as to remedies,* but, whichever route he chooses, the 'action for injuries' statute of limitations . . . applies." (Emphasis added.)

It is evident from a reading of the record that the trial court correctly concluded that the plaintiff's contract and tort theories were based upon the same identical acts of the defendants.

Moreover, it is apparent that under the facts as pleaded, the plaintiff has but one "primary right" which he seeks to enforce; namely, the right that the physician and hospital attendants who treat him will do so with the appropriate skill and care as provided by law and,

therefore, under well-established rules of this state, has pleaded but one cause of action. *Uihlein v. Rosenberg* (1949), 255 Wis. 412, 39 N. W. 2d 389.

Although plaintiff has pleaded but one cause of action, she has two available remedies: one sounding in tort—the other in contract. In *Shawano Finance Corp. v. Haase* (1947), 252 Wis. 12, 15, 30 N. W. 2d 82, it is stated:

"It has long been the law in this state that where a party who has a cause of action sounding either in tort or contract, and has elected to sue on contract, that he cannot thereafter recover damages as and for a tort. *Huganir v. Cotter* 102 Wis. 323, 78 N. W. 423."

Plaintiff does not contend that she should have a double recovery, only that she should have been allowed to select the remedy to be pursued after all her proof was in. While there may be situations where a party has a real and legitimate doubt as to which of his several remedies is the right one to pursue, a trial court may, under those circumstances, not require him to elect his remedy until the close of the case when all the proof is in. Such a decision, however, rests within the *sound discretion of the trial court. Phillips v. Carver* (1898), 99 Wis. 561, 75 N. W. 432.

It is evident from a reading of the record that the trial court did not abuse its discretion. The trial court correctly concluded that plaintiff's contract and tort theories as they related to each were premised upon the same identical acts of the defendants. Likewise, a reading of the record fails to disclose any instance in which the plaintiff was denied an opportunity to submit proof on his contract theory, since in this case they would be the same whether seeking a remedy in tort or under contract. The trial court did not abuse its discretion in compelling an election prior to trial.

*New trial in the interest of justice.*

Plaintiff asks this court to exercise its discretionary power pursuant to sec. 251.09, Stats., and to grant a new trial in the interest of justice on the ground that justice has probably not been accomplished.

Counsel for plaintiff has listed numerous instances in which he contends the trial court committed error. After a review of the record, we find no merit to plaintiff's contentions that the evidentiary rulings of the trial court caused a probable miscarriage of justice.

We conclude that the case was fully tried, that the proper issues were presented to the jury, that the jury was properly instructed and that there is credible evidence to support the jury's findings.

*By the Court.*—Judgment affirmed.