NELSON, Plaintiff, v. L. & J. PRESS CORPORATION, Defendant and Third-Party Plaintiff and Respondent: BARG ELECTRIC COMPANY and another, Third-Party Defendants and Appellants.*

*No. 313. Argued October 30, 1974.—Decided December 2, 1974.*
(Also reported in 223 N. W. 2d 607.)

* Motion for rehearing denied, with costs, on February 4, 1975. Mandate revised. *See* post, p. 784.

772

For the third-party defendant-appellant Barg Electric Company there was a brief by *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Bernard J. Hankin;* and for the third-party defendant-appellant Velvac, Inc., there was a brief by *Law Office C. Donald Straub* of Milwaukee, and oral argument by *C. Donald Straub*.

For the respondent there was a brief by *Prosser, Wiedabach, Lane & Quale, S. C.* of Milwaukee, and oral argument by *Jack R. Wiedabach*.

ROBERT W. HANSEN, J. What caused the punch press to repeat, when set for the "once" operation, and who was responsible for its so doing?

*Was the continuous operation of the punch press caused by plaintiff's operation of the foot pedal?* The jury rejected this conclusion as to what happened. It found no contributory negligence on the part of the plaintiff. That conclusion is supported by evidence that the plaintiff operator was using the foot control at the time of the accident and that the machine was set for the "once" operation and should not have repeated unless the foot control was released and pressed again. Five minutes after the accident, the plaintiff stated, "I'm sorry, it repeated three times." This statement, testified to by two witnesses at the scene, was properly admitted

into evidence under the excited utterance exception to the hearsay rule.[1] This statement supports the inference that plaintiff was properly operating the machine, did not press the foot pedal for a repeat operation, and that the machine malfunctioned.

*Why did the punch press malfunction by repeating when it was set for a "once" operation?* If the plaintiff did not press the pedal for a repeat operation, the punch press itself must have malfunctioned. But why and how? A Velvac employee, when the press malfunctioned again during a testing operation after the accident, opened the control box and found and removed a piece of wire and a piece of solder from between two terminals. An insurance claims representative, investigating the accident, observed scraps of solder and insulation in the control box. An electrical engineer, called as an expert witness by L. & J. Press, testified, in answer to a hypothetical question,[2] that, in his opinion, the press was caused to

---

[1] *See: Cornwell v. Rohrer* (1968), 38 Wis. 2d 252, 259, 156 N. W. 2d 373, stating: " 'Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made (a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or (b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains.' " Citing *Rudzinski v. Warner Theatres* (1962), 16 Wis. 2d 241, 247, 114 N. W. 2d 466. *See also:* Wisconsin Rules of Evidence, sec. 908.03 (2).

[2] Objection is and was made to the hypothetical question asked, as lacking a proper foundation, but we uphold the trial court ruling that a proper foundation was present. For the Wisconsin rule on hypothetical questions, *see, Rabata v. Dohner* (1969), 45 Wis. 2d 111, 134, 135, 172 N. W. 2d 409, this court stating: "Of course, it is within the discretion of counsel eliciting the opinion to use a hypothetical question if he so desires; but under the rule which we herein adopt, he will no longer be forced to do so if the use of such question, in his opinion, is likely to dull the effect of the point at issue. The trial judge, however, when he feels

repeat when the piece of stranded wire fell and shorted two terminals which served the same function as the foot switch. As the trial court noted in its opinion, when the piece of wire and the piece of solder were removed from between the terminals, the press again worked without malfunction. However, locating an entirely reasonable explanation of what caused the malfunction does not determine who was responsible for the presence of the debris in the control box.

*Was the manufacturer or the modifier of the punch press, either or both, responsible for the presence of the debris in the control box?* The jury found negligence on the part of L. & J. Press, the manufacturer, and Barg, the modifier—10 percent on the part of the manufacturer, and 80 percent on the part of the modifier. We deal here with the piece of solder and the piece of stranded wire found in the control box lodged between the two terminals. Solder was used by Shaum Electric in assembling the control box, and was not used by Barg in modifying the controls. The manufacturer used stranded wire; the modifier used solid wire. However, the employee of the contractor, Barg, who did the actual modifying, testified that he did disconnect some of the stranded wires, and insulation had been stripped from the original stranded wires in the control box. The trial court held that the jury could find the manufacturer, L. & J. Press, causally negligent ". . . in the design of the control

that the propounding of the question without a clear statement of the assumptions upon which it is based would confuse rather than aid the jury, may in his discretion insist that a hypothesis be used. He may also, of course, insist that some foundation be put in the record if he believes that the elicitation of an opinion without a foundation is likely to mislead or confuse the jury. In general, however, if the premises upon which the conclusion is reached are to be attacked as being inadequate to support the opinion, even in light of the expert qualifications, it becomes the duty and obligation of opposing counsel to draw out the data on which the expert has arrived at his opinion. . . ."

panel, and the proximity of exposed wires and connections between which an electrical connection could be made by a piece of wire of the size of that which is a part of Exhibit 12." We agree that it could. The trial court found that the jury could find the modifier, Barg Electric, causally negligent ". . . in the method and manner in which it changed the machine," and ". . . in not cleaning out the box, and that the piece of wire was left there by it." We agree that it could. We agree as well that the jury was entitled to find that the modifier, Barg, was primarily at fault in causing plaintiff's injury. Appellant Barg's contention that the verdict here was based on conjecture is rejected, there being sufficient evidence here to sustain the verdict.[3]

Appellant Barg Electric also argues that it is entitled to judgment notwithstanding the verdict since any liability on its part would shift, it being an independent contractor, to Velvac upon acceptance and payment for its work.[4] Where the defect in work done is not readily

[3] See: *Wills v. Regan* (1973), 58 Wis. 2d 328, 340, 206 N. W. 2d 398, this court stating: " 'What is proximate cause is ordinarily a question for the jury if the evidence is conflicting or if different inferences can be drawn from it. *Schultz v. Brogan*, 251 Wis. 390, 29 N. W. (2d) 719, and "if the evidence is conflicting or, although not contradictory, is open to two or more reasonable inferences as to what actually took place, the case must be left to the jury." Sec. 434, comment *c*, Restatement, 2 Torts, p. 1172, quoted with approval in *Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 233, 55 N. W. (2d) 29.' *Roeske v. Schmitt*, 266 Wis. 557, 568, 64 N. W. (2d) 394." (As set forth in *Weber v. Walters* (1954), 268 Wis. 251, 256, 67 N. W. 2d 395.)

[4] See: *Cadden v. Milwaukee County* (1969), 44 Wis. 2d 341, 345, 171 N. W. 2d 360, this court stating: " 'It is a well-established general rule that, where the work of an independent contractor is completed and is turned over to, and accepted by, the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, the responsibility, if any, for maintaining or using the property in its defective condition shifting to the owner.' " Quoting 65 C. J. S., *Negligence*, pp. 1060, 1061, sec. 95.

observable upon reasonable inspection, the rule does not apply.[5] As to the work done within a subsequently sealed and airtight electric control box, we do not see payment for the work as having any such consequence here. This observation leads directly to the question of whether there was such duty to inspect and discover on the part of Velvac in this case under these facts.

*Was there a breach of any duty owed by Velvac, the purchaser and operator of the punch press, to the plaintiff?* We need, initially, to determine the status of the plaintiff, the person injured when the punch press malfunctioned. Appellant Velvac claims plaintiff was a loaned employee at the time of injury and thus limited to workmen's compensation recovery. The trial court held that he was not a loaned employee. We agree. Under the four-element test applicable,[6] the required element of

[5] *Id.* at page 345, this court stating: " '. . . However, the general rule has variously been criticized, limited, or rejected, and there are well recognized exceptions thereto. One of them is that the contractor is liable where the work is a nuisance, or inherently, intrinsically, or abnormally dangerous. Another exception is that he is liable where the work done and turned over by him is so negligently defective as to be imminently or immediately dangerous to third persons, particularly where there is a continuous duty of inspection on the contractor after completion of the work, provided, in the case of a dangerous situation, the contractor knows, or should know, of the situation created by him, and the owner or contractee does not know of the dangerous condition or defect and would not discover it by reasonable inspection.' " Quoting 65 C. J. S., *Negligence*, pp. 1062–1064, sec. 95.

[6] *See: Freeman v. Krause Milling Co.* (1969), 43 Wis. 2d 392, 394, 168 N. W. 2d 599, this court stating: " 'The essential tests to be applied in determining whether a loaned employee retains his employment with his original employer, or becomes the employee of the special employer, are set forth in *Seaman Body Corp. v. Industrial Comm.* (1931), 204 Wis. 157, 163, 235 N. W. 433, as follows:

" ' " The vital questions in controversies of this kind are:

" ' " (1) Did the employee actually or impliedly consent to work for a special employer?

actual or implied consent on the part of the plaintiff to work for the special employer is here completely absent.[7] Plaintiff was sent to work for Velvac by his employer, Labor Pool, under a work order that provided that it was understood and agreed that plaintiff was an employee of Labor Pool, and would not be employed by Velvac for ninety days. There is nothing to indicate that plaintiff consented to a new employment relationship with Velvac.[8] His legal status is that of an invitee, a business invitee, on the premises of Velvac.

The duty devolving upon Velvac here was a duty to use reasonable care in discovering a defect or danger inside

---

" ' " (2) Whose was the work he was performing at the time of injury?

" ' " (3) Whose was the right to control the details of the work being performed?

" ' " (4) For whose benefit primarily was the work being done?" '

"We start with the legal inference (perhaps more correctly labeled a presumption under our conception of presumptions and inferences) that the employee remains in the employ of the general employer."

[7] See: *Ryan, Inc. v. ILHR Department* (1968), 39 Wis. 2d 646, 650, 159 N. W. 2d 594, this court stating: ". . . Of these four tests, this court has stated that 'the most-important one is the first, viz., did the employee actually or impliedly consent to work for the special employer.' . . . [I]t is essential that the employee understands the existence of and agree to the temporary new relationship. . . ." Quoting *Hanz v. Industrial Comm.* (1959), 7 Wis. 2d 314, 316, 96 N. W. 2d 533.

[8] See: *Rhinelander Paper Co. v. Industrial Comm.* (1931), 206 Wis. 215, 217, 218, 239 N. W. 412, this court stating: ". . . Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. . . . Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another. . . ."

the electric control box and, under these circumstances, a correlative duty to warn the plaintiff of it or take steps to correct it.[9] As master or invitor, Velvac here would be liable for the consequences of any defects "of which he knew, or which he might have discovered by reasonable inspection." [10] However, notice, actual or constructive, is required to trigger the duty involved.[11] There is here no claim of any actual notice of defect up to the moment when the punch press malfunctioned, causing the injury to plaintiff. The claim of negligence or breach of duty owed must rest upon constructive notice by the ten

[9] See: *Marshall v. Miles* (1972), 54 Wis. 2d 155, 162, 194 N. W. 2d 630, this court stating: ". . . If the legal relationship between the defendant and the plaintiff was that of master and servant, defendant would be under a duty to warn the plaintiff of dangers of which the defendant had knowledge or should have discovered in the exercise of reasonable care unless the danger was, or should have been, obvious to the plaintiff. *Szep v. Robinson* (1963), 20 Wis. 2d 284, 121 N. W. 2d 753. If the legal relationship between the defendant and the plaintiff was that of invitor-invitee, as the trial court held, the defendant was under a duty to use reasonable care in discovering such dangerous condition and, notwithstanding the obvious or apparent nature thereof, may have been under a duty to warn the plaintiff. *Voeltzke v. Kenosha Memorial Hospital* (1969), 45 Wis. 2d 271, 172 N. W. 2d 673; Prosser, *Law of Torts* (3d ed.), pp. 403, 404, sec. 61. . . ."

[10] See: *Szep v. Robinson* (1963), 20 Wis. 2d 284, 289, 290, 121 N. W. 2d 753, this court quoting Prosser, *Law of Torts* (2d ed.), p. 375, sec. 67: "'. . . The master . . . would be liable for any defects of which he knew, or which he might have discovered by reasonable inspection, and the care he was required to exercise must be proportionate to the danger. . . .'"

[11] *Wallow v. Zupan* (1967), 35 Wis. 2d 195, 200, 201, 150 N. W. 2d 329, this court stating: "In common law, as under the safe-place statute, if the defendant is to be held liable for negligence, he must have had actual or constructive notice of the condition which caused the [injury]. . . ." Citing *Kosnar v. J. C. Penney Co.* (1959), 6 Wis. 2d 238, 242, 94 N. W. 2d 642; *Lundgren v. Gimbel Bros.* (1927), 191 Wis. 521, 523, 210 N. W. 678; and *Appel v. Ruggaber* (1923), 180 Wis. 298, 301, 192 N. W. 993. And adding: "' Constructive notice of course is neither notice nor knowledge, but a mere shorthand expression. We say a person has constructive

months elapsing between installation and injury.[12] That is what the trial court here held, saying of the ten-month time span, ". . . During all that time, Velvac did not open the panel box, among other things, to see how the work was done." On this record, given this piece and type of equipment, under the "reasonable person" test, can it be said that the ten-month time span constituted constructive notice of a possible defect or danger within the sealed electric control box?

Here the evidence establishes that Velvac did two things: (1) They bought a punch press from L. & J. Press; and (2) after it was installed, they engaged a competent electrical contractor, Barg Electric, to add two additional palm button switches. Both after the installation and after the modification, the electric control box, attached to the punch press, was sealed so as to keep it airtight. After either installation or modification by competent electrical contractors, would a reasonable person open the seal and uncover the complicated electrical control panel to make sure that no debris had been left in the box? Granted that the risk was not known or apparent, can it be said that a reasonable person would open the sealed control box to determine if risks, not known or apparent, therein existed?[13] The nature of the

notice of something when for the promotion of sound policy or purpose he is to be treated as if he had actual notice, whether or not he had it in fact. . . .'" Quoting *Uhrman v. Cutler-Hammer, Inc.* (1957), 2 Wis. 2d 71, 75, 85 N. W. 2d 772.

[12] *Id.* at page 201, this court stating: "'. . . To have notice of a defect, of course the defect must exist and, in order to impose liability, it must exist for so long a time that the party charged with responsibility by the safe-place statute has opportunity not only to discover it but to remedy the situation and avoid the accident. . . .'" Quoting *Boutin v. Cardinal Theatre Co.* (1954), 267 Wis. 199, 204, 64 N. W. 2d 848.

[13] *See: Ruff v. Burger* (1966), 32 Wis. 2d 141, 148, 149, 145 N. W. 2d 73, this court stating: ". . . nor is there any evidence of any facts known to Reynolds that would impel a reasonable man to make any inquiries in regard to the cable or to adopt any

equipment involved, and the sealed nature of the control box involved, make unreasonable such expectation. Does the passage of ten months' time, during which the punch press and its attached control box worked perfectly, with no malfunction and no nonfunction, change the situation so as to create a constructive notice of concealed defect? We have here no situation where opening the sealed control box to check for wear and tear or to make adjustments was indicated or appropriate. The machine, and its attached control mechanism, functioned properly and without the slightest deviation from the normal for ten months. At the end of ten months, or at any time between, can such entirely reassuring performance give constructive notice of the possibility of defect or danger being present in the control box? To a reasonable person, would not such continued functioning without difficulty be reassuring, rather than alerting to the possibility of concealed defect or hidden danger? Given the complicated nature of this piece of equipment, the sealing of the electric control box to render it airtight, the completely satisfactory functioning of the punch press and its electrical control system from the time of installation to the time of injury, there is no reason whatsoever for a reasonable person to open the control box to check its contents for pieces of wire or solder. We find in this record, and in this situation, no basis for holding that ten months of entirely proper functioning gives notice, actual or constructive, of a defective or dangerous condition existing within the control box. Under these facts, we find, as a matter of law, no duty or responsibility on the part of defendant Velvac to have opened the seal

special precautions concerning it. '. . . the individual will not be held to knowledge of risks which are not known or apparent to him.' Prosser, Law of Torts (hornbook series, 3d ed.), p. 162, sec. 32. He may, of course, be engaged in an activity that obliges him to find out what risks exist even if they are not apparent to him. The record, however, is devoid of any evidence that places that responsibility on Reynolds."

and uncovered the control box to check its contents. Finding no duty and no constructive notice of duty, we are required to hold that the jury finding of 10 percent causal negligence on the part of third-party defendant Velvac cannot be sustained on this record. We would prefer to modify the jury verdict to accommodate this holding, but there is no way in which that can be done. Striking the jury's apportionment of 10 percent causal negligence to Velvac requires reversal of the judgment, and remand for a new trial.

Respondent L. & J. Press Corporation claims a trial court abuse of discretion in denying costs and attorney fees under sec. 889.22, Stats.[14] Prior to trial, L. & J. Press served a demand to admit or refuse to admit on third-party defendants, Barg Electric and Velvac. Both answered, admitting some paragraphs and denying others. L. & J. Press contends that the refusal to admit that the accident was caused by debris short-circuiting the electrical controls leading to the foot pedal was unreasonable. The trial court denied the requested costs, finding the refusal to be reasonable since the facts were not within the knowledge of the third-party defendants until evidence thereof was adduced at trial. We find no abuse of discretion. The cause of the injury to plaintiff

---

[14] Sec. 889.22 (1) (b) and (4), Stats., providing:

". . . (1) Any party to any action may, by notice in writing served upon a party or his attorney at any time after an issue of fact is joined and not later than 10 days before the trial, call upon such other party to admit or refuse to admit in writing:

". . .

"(b) The existence of any specific fact or facts material in the action and stated in the notice."

And further providing:

"(4) In case of refusal to make such admission, the reasonable expense (including attorney fees not exceeding $250) of proving any fact or document mentioned in the notice and not so admitted shall be determined by the court at the trial and taxed as costs in any event against the party so notified, unless the court is satisfied the refusal was reasonable."

was the principal issue at time of trial. The third-party defendants were entitled not to admit what they may well have felt L. & J. Press could not establish at time of trial. The burden was on L. & J. Press to establish causal negligence on the part of Barg Electric and Velvac, and, under these circumstances, the third-party defendants were entitled to keep it there. There was no abuse of discretion in the trial court finding the refusal to admit here to be reasonable, or in its denying the requested costs.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint against defendant Velvac, Inc., and for a new trial on the issue of negligence.

On February 4, 1975, the following opinion was filed.

PER CURIAM *(on motion for rehearing).* The mandate is revised to provide: "Judgment reversed and cause remanded with directions to dismiss the complaint against defendant Velvac, Inc., and for a new trial on the issue of negligence. Costs to Velvac, Inc., as to L. & J. Press Corporation; no costs to be taxed as between L. & J. Press Corporation and Barg Electric Company."