PHYSICIANS PLUS INSURANCE CORPORATION, Subrogated-Plaintiff-Respondent,

v.

MIDWEST MUTUAL INSURANCE COMPANY, Defendant,

THERESA MUTUAL FIRE INSURANCE COMPANY, Donald Franke, Wisconsin Municipal Mutual Insurance Company, Dodge County, Robert Embertson, Rural Mutual Insurance Company, Township of Leroy and Linus Schraufnagel, Defendants-Appellants.†

Timothy J. SMITH, Plaintiff-Respondent,

STATE of Wisconsin, Department of Health and Family Services, Division of Health, Subrogated-Plaintiff-Respondent,

v.

THERESA MUTUAL INSURANCE COMPANY, Don-Er Farms, Inc., Donald Franke, Ermanelda Franke, Wisconsin Municipal Mutual Insurance Company, Dodge County, Robert Henken, Highway Commissioner for Dodge County, Robert Embertson, Rural Mutual Insurance Company, and Township of Leroy, Defendants-Appellants.†

Court of Appeals

*No. 00–1836. Submitted on briefs February 12, 2001.—Decided June 28, 2001.*

†Petition to review granted.

2001 WI App 148

(Also reported in 632 N.W.2d 59.)

935

938

On behalf of the defendants-appellants, Dodge County, Robert Embertson, Wisconsin Municipal Mutual Insurance Co., and Robert Henken, the cause was submitted on the briefs of *Robert E. Storck* of *Storck, Schnabl & Madden,* Mayville.

On behalf of the defendants-appellants, Theresa Mutual Insurance Co., Don-Er Farms, Inc., Donald Franke and Ermanelda Franke, the cause was submitted on the briefs of *Arnold P. Anderson* of *Mohr & Anderson, S.C.,* Madison and *Thomas E. Goss, Jr.* of *Mueller, Goss & Possi, S.C.,* Milwaukee.

On behalf of the defendants-appellants, Township of Leroy, Linus Schraufnagel, and Rural Mutual Insurance Co., the cause was submitted on the briefs of *Phillip J. Eckert* of *O'Meara Law Firm, LLP,* West Bend.

On behalf of the plaintiff-respondent, Timothy J. Smith, the cause was submitted on the brief of *Eric A. Farnsworth* of *DeWitt Ross & Stevens, S.C.,* Madison.

Before Dykman, P.J., Vergeront and Deininger, JJ.

¶ 1. DEININGER, J. Dodge County, the Town of Leroy, several officials of each, Donald and Ermanelda Franke and their farm corporation, and the liability insurers for all of the foregoing, appeal an order granting partial summary judgment in favor of

plaintiff Timothy Smith.[1] The trial court concluded that the County, the Town, and the Frankes each had a duty to eliminate the safety hazard created by low-hanging tree branches which obscured a stop sign, that each failed to do so, and that the obscuration of the sign was a cause of the accident in which Smith was injured. Accordingly, it ordered that only the apportionment of negligence "as compared to each other and as compared to any other parties whose negligence contributed to the accident, will be determined by subsequent jury trial." We granted the County, the Town, and the Frankes, each leave to appeal the trial court's order, and each claims the trial court erred in its summary judgment ruling. We agree that the trial court should not have granted summary judgment on the issue of causation, but we affirm the order in all other respects.

---

[1] The defendants-appellants comprise three separate interests: Dodge County, its employees and insurer; the Town of Leroy, its clerk and insurer; and the Frankes, their corporation and insurer. We will refer to each, collectively, as the County, the Town, and the Frankes. The caption also identifies two entities (Physicians Plus Insurance Corporation and the Wisconsin Department of Health and Family Services) as "subrogated-plaintiff-respondents." Neither has filed a brief in this appeal, but both have notified us that they "adopt" the position or brief of the plaintiff-respondent, Timothy Smith.

Defendant Midwest Mutual Insurance Company insured Smith's vehicle and apparently has a subrogated interest in this litigation, having paid medical benefits to Smith's passenger, Tracey Leistico, and property damage compensation to Smith, but it is not a party to the appeal. Finally, Leistico and her parents were originally plaintiffs in one of the consolidated cases in the trial court, but their counsel advised us "[t]heir claims have been settled in their entirety and they no longer have an interest in this case." Accordingly, we ordered the Leisticos' names removed from the caption.

## BACKGROUND

¶ 2. On the afternoon of July 21, 1996, Timothy Smith and a passenger on his motorcycle were traveling northbound on Dodge County Trunk Highway Z ( CTH "Z") in the Town of Leroy. At the intersection of CTH "Z" and Ledge Road, a town road, Smith's motorcycle collided with a vehicle driven by Diane Smith, who is not related to Timothy, and who was traveling eastbound on the town road at the time of the collision.[2] Diane stated that she had not noticed a "stop ahead" sign on Ledge Road, that the stop sign at its intersection with CTH "Z" was obscured from her view by the branches of a tree located in the yard of the Frankes' farm residence (which is situated in the southwest corner of the intersection), and that her view of traffic coming from the south on CTH "Z" was blocked by the Frankes' buildings and the tree.[3] She admitted to drinking beer prior to the accident and to removing some full cans of beer from her vehicle prior to the arrival of sheriff's deputies.

¶ 3. The stop sign in question was placed by the County and was located within the CTH "Z" right-of-way. CTH "Z" is a county "arterial" highway, and there were no traffic signs or control devices regulating traffic on the county highway at its intersection with Ledge Road. The tree was located on land owned by the

---

[2] We will refer to plaintiff-respondent Timothy Smith as Smith, and to Diane Smith as Diane.

[3] Three days after the accident, Diane told an insurance investigator:

> I came down the hill and didn't see the stop sign because the tree was over hanging nearly to the ground and at the last second I saw a glimpse of red and realize (sic) that there must be a stop sign then I saw the motorcycle from the right and I swerved to the left and we crash (sic).

Frankes, and its trunk was either wholly or in large part within the Town's right-of-way for Ledge Road, about fourteen feet south (along CTH "Z") and twenty-four feet west (along Ledge Road) of the stop sign. The Town maintains Ledge Road. The tree's branches facing the Frankes' residence had been trimmed, but on the roadside, the branches extended to within four-and-one-half feet of the paved road, and to within approximately one foot of the ground. The record contains several photographs and a videotape taken within two hours of the accident which show the locations of the intersection, the stop sign, the tree and its branches. On the basis of this photographic evidence, the trial court concluded that there could be no dispute that the tree branches "completely obscured" the stop sign from the view of an eastbound motorist on Ledge Road until the motorist is virtually upon the intersection.

¶ 4. An arborist averred in an affidavit that the tree in question is a honey locust tree, and that based on the "size or dimension of the branches which were obstructing the stop sign," the obstruction existed "for at least the spring and summer of 1996 and the foliage season of 1995." The County inspects its stop signs every other November, at night, to determine their reflectivity, but does not regularly conduct inspections to see if vegetation or trees obscure the signs. The town board conducts an annual inspection of its roads in April, at a time when there are no leaves on the trees. The Frankes use their driveway, which accesses Ledge Road just west of the tree and stop sign at issue, about twice a day. Mrs. Franke is the Town of Leroy assessor, and a town board member resides across Ledge Road from the Frankes.

¶ 5. The County, the Town and the Frankes all moved for summary judgment, each arguing that it or they had no duty to eliminate the obstruction to the view of the stop sign created by the tree branches. The trial court denied these motions in June 1998. The matter was set for trial in January 2000, but in an apparent attempt to narrow or clarify issues to be tried, the court took the case off the trial calendar and entertained additional summary judgment motions. Smith moved for partial summary judgment on the liability of each of the defendants for his injuries, and all three defendants renewed their motions asking the court to rule that each had no liability for Smith's injuries.

¶ 6. The court ruled in Smith's favor, concluding that, as to the liability of each of the defendants, there were no issues of material fact to be tried; that as a matter of law, the County, the Town, and the Frankes had each breached a duty to abate the nuisance created by the tree branches obscuring the stop sign; and that the obscuration of the stop sign was a cause of the injury-producing accident, leaving only apportionment of causal negligence (and, presumably, damages) to be tried. Upon our granting of leave, the County, the Town, and the Frankes appeal.

## ANALYSIS

### I.

▮▮▮▮

¶ 7. We review an order for summary judgment de novo, owing no deference to the trial court. *Waters v. United States Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment

as a matter of law." *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995); WIS. STAT. § 802.08(2) (1999–2000).[4] We will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts were in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

¶ 8. "The well-known purpose of summary judgment is 'to avoid trials where there is nothing to try.' " *Transportation Ins. Co., Inc. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 289–90, 507 N.W.2d 136 (Ct. App. 1993) (citation omitted). A party seeking summary judgment, such as Smith did here, must " 'establish a record sufficient to demonstrate . . . that there is no triable issue of material fact on any issue presented.' " *Id.* at 290 (citation omitted). We, like the trial court, however, are prohibited from deciding issues of fact and may decide only whether a factual issue exists. *Coopman*, 179 Wis. 2d at 555.

¶ 9. With these principles in mind, we review the record before us to determine whether the trial court erred in granting summary judgment to Smith on the issue of the liability of each of the defendants for his injuries. Although our review is de novo, we are aided in this case by the trial court's thoughtful analysis. *See Katzman v. Ethics Bd.*, 228 Wis. 2d 282, 291, 596 N.W.2d 861 (Ct. App. 1999). In its forty-three-page written decision and six-page supplemental decision, the trial court has thoroughly laid out its reasoning and directed our attention to items in the record which

---

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

support its conclusions. The trial court's effort in these regards has greatly assisted us in our review.

## II.

¶ 10. We consider first whether the trial court erred in denying summary judgment to any of the three defendants, each of whom claim to have had "no duty" with respect to the tree branches which obscured the stop sign. As we discuss in greater detail below, we conclude that the supreme court's discussion and holding in *Brown v. Milwaukee Terminal Railway Co.*, 199 Wis. 575, 224 N.W. 748, *on reargument*, 199 Wis. 588, 227 N.W. 385 (1929) provides the proper framework for our analysis of whether any or all of the defendants may be held liable to Smith on the present facts.[5] The supreme court explained in *Brown* that "[l]iability for the . . . maintenance of a nuisance 'extends to everything that endangers life or health,' " and that where a defendant's acts do not create the endangering circumstance or condition, liability turns on whether the defendant had "notice of the existence of the danger." *Brown*, 199 Wis. at 588, 589.

¶ 11. We thus recognize that, under our analysis, the liability of the defendants is predicated on their failure to eliminate a nuisance, not on any negligent act or omission on their part. The parties have framed and argued the threshold issue in this case in terms of each defendant's "duty," or lack thereof, to trim the offending tree branches. Most discussions of duty are

---

[5] The supreme court issued two opinions in *Brown v. Milwaukee Terminal Railway Co.*, 199 Wis. 575, 224 N.W. 748, *on reargument*, 199 Wis. 588, 227 N.W. 385 (1929). Other than factual references, we will refer to the court's decision on reargument.

found in cases involving negligence, but we discern no difference in the proper analysis and resolution of the issue in this case, notwithstanding the fact that liability here is predicated on nuisance rather than negligence. As we explain below, although often expressed in terms of "duty," the question presented is really one of public policy: Should a party whose act or omission has caused harm to another be shielded from liability on public policy grounds?

¶ 12. Thus, we first address whether each of the defendants had a duty to take action to remove the obstruction to motorists' view of the stop sign created by the tree branches. If each did, the trial court was correct in denying each defense motion for summary judgment based on the respective claims that, as a matter of law, each defendant had no such duty. As we discuss below, this is a purely legal inquiry, and we will assume for present purposes that the tree branches so obscured an approaching motorist's view of the stop sign that, by the time the motorist was able to see the sign, he or she would be unable to stop at the intersection. The record contains evidence to support this proposition, and we are to view the evidence in the light most favorable to the nonmoving party, and, for this part of our analysis, that is Smith.[6] *See Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

---

[6] We consider below whether the evidence in the record, viewed in a light most favorable to each of the defendants, supports the trial court's conclusion that, as a matter of law, each defendant was liable for Smith's injuries. The County and the Frankes claim there are disputed issues of material fact which preclude summary judgment in Smith's favor. (The Town has conceded "[f]or purposes of this appeal only . . . the facts as determined by the Circuit Court.") With respect to whether each defendant owed a duty, however, by moving for summary judg-

¶ 13. Under Wisconsin law, a "duty of care" exists "whenever it was foreseeable to the defendant that his or her act or omission to act might cause harm to some other person." *Gritzner v. Michael R.*, 2000 WI 68, ¶ 20, 235 Wis. 2d 781, 611 N.W.2d 906. And, "[w]henever a court holds that a certain act [or omission] does not constitute negligence because there was *no duty* owed by the actor to the injured party, although the act [or omission] complained of caused the injury, such court is making a policy determination." *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 183, 77 N.W.2d 397 (1956). Thus, in Wisconsin, "everyone has a duty to act with reasonable care" and "[l]iability for breach of that duty is limited on public policy grounds." *Gritzner*, 2000 WI 68 at ¶ 24 n.4. The question of whether a defendant should not be held liable for a certain act or omission on public policy grounds (or to thus be deemed "to have no duty" under the facts and circumstances) is often better decided after a full exposition of the facts at trial, but if the relevant facts are not disputed, the question is one of law and may be decided by a court on pre-trial motions. *See Olson v. Ratzel*, 89 Wis. 2d 227, 251–52, 278 N.W.2d 238 (Ct. App. 1979).

¶ 14. The defendants moved for summary judgment, pointing to statutes and case law which each claims reflect public policies precluding its or their liability for Smith's injuries, even if the tree branches did, in fact, create a hazard to motorists at the intersection in question. We note at the outset that the tree was located on the Frankes' land, it and the offending

ment, each defendant asserts the lack of disputed material facts regarding the issue. *See Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991).

branches were situated in the Town's right-of-way, and the obscured stop sign was installed and maintained by the County. The three defendants are clearly the only persons or entities who might bear some responsibility for ensuring that the dangerous situation posed by the branches obscuring the stop sign was corrected. If each is excluded from liability on public policy grounds (that is, if none "had a duty" to eliminate the hazard), the result would be that an obvious hazard to public safety could continue to exist, with no one having any obligation to correct it. We would be hard pressed to conclude that the public policy of our state, as reflected in its statutes and case law, would support such a result.[7] Our inquiry is thus whether *any* of the three defendants have elucidated a public policy which relieves it or them of liability on the facts before us. We conclude that none have done so.

¶ 15. We begin with the Frankes. Smith asserts that a landowner's duty to eliminate hazards to the safety of the traveling public emanating from trees on the owner's land that are situated in or adjacent to the public right-of-way was established in *Brown*:

> The planting of shade trees in public streets, outside the limits of travel either upon the paved portion of the street or upon the sidewalk, does not ordinarily result in injury or damage to any who use the streets. Such trees, properly placed, do not constitute nuisances. But when such a tree, through decay or because of any change in the structure of

---

[7] None of the three defendants maintain that no one had a duty to see that the roadside branches obscuring the stop sign were trimmed. Rather, each defendant asserts that the duty belonged to one or both of the others.

the tree or in its surroundings, becomes a menace to the safety of those who travel the street, such tree may become a nuisance which will render the owner of the adjoining lot liable for injuries which may be caused to those who lawfully use the streets. In such cases where danger results, not from the planting of the tree, but through subsequent changes for which the defendant is not responsible, it is essential to liability that it be shown either that the defendant knew of the danger incident to the maintenance of the tree or that such condition had existed for such length of time that, by the exercise of ordinary care, the defendant ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff.

*Brown,* 199 Wis. at 589–90. The supreme court in 1961 verified the continuing validity of the holding in *Brown,* even where statutes or ordinances grant a municipality certain rights or responsibilities with respect to plantings within the public right-of-way. *Plesko v. Allied Inv. Co.,* 12 Wis. 2d 168, 173–74, 107 N.W.2d 201 (1961) (concluding that "unless an abutting owner be excluded by law or ordinance from removing a dangerous tree from the area between the sidewalk and the curb, the *Brown* decision should continue to apply").

¶ 16. The Frankes attempt to distinguish *Brown* by noting that "there was nothing wrong with" the tree at issue in this case: "It did not fall on the highway, it did not hit anyone, nor was it rotten or decayed." The tree in *Brown* was located "between the public sidewalk and the curbing" fronting a city street; it was "dead and decayed"; and it "suddenly and without warning fell, striking plaintiff, who was then lawfully on the sidewalk." *Brown,* 199 Wis. at 577. Similarly, in *Plesko,* the tree was situated in the terrace of a city

street, "was in a diseased and rotted condition," and it fell on the plaintiff's vehicle as she drove past in the street. *Plesko*, 12 Wis. 2d at 169. We reject the notion, however, that the holding in *Brown* is limited to "falling dead tree" cases. The supreme court's language is considerably broader:

> [W]hen . . . a tree . . . *because of any change in the structure of the tree* or in its surroundings, becomes a menace to the safety of those who travel the street, such tree may become a nuisance which will render the owner of the adjoining lot liable for injuries which may be caused to those who lawfully use the streets.

*Brown*, 199 Wis. at 589–90 (emphasis added).

¶ 17. The Frankes also seek to frame the issue as whether they had "a duty to maintain the stop sign." They clearly did not. We accept their assertion that "the erection and maintenance of stop signs is a duty owed by the municipality generally to the public." *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 539, 247 N.W.2d 132 (1976); *see also Firkus v. Rombalski*, 25 Wis. 2d 352, 358, 130 N.W.2d 835 (1964); WIS. STAT. § 349.065. Despite their argument that "[i]f there were no stop sign, there would be no lawsuit," however, we reject the Frankes' claim that the responsibility for maintenance of the stop sign is the beginning and the end of our inquiry. In addition to the stop sign at the intersection, there was a tree in the Frankes' yard which obscured the sign from the view of motorists on Ledge Road. It could as easily be said that "if there were no tree obscuring the stop sign, there would be no lawsuit."

¶ 18. The Frankes cite *Naker v. Town of Trenton*, 62 Wis. 2d 654, 215 N.W.2d 38, *on rehearing*, 62 Wis. 2d 660, 217 N.W.2d 665 (1974), for the proposition that "[t]he duty to maintain stop signs also includes the duty to remove brush and trees that obscures (sic) the sign." The supreme court concluded in *Naker* that a plaintiff who alleged that "brush and trees" obscured the visibility of a stop sign had stated a cause of action against the Town which had jurisdiction over the road and stop sign at issue. *Id.* at 656–57. The court stated: "A sign once erected by legislative action must be properly maintained, and the failure to properly maintain it may be negligent." *Id.* at 660a. Nonetheless, we conclude that a municipality's responsibility to place and maintain stop signs does not, by itself, establish a public policy to absolve adjoining landowners from liability for the interference with sign visibility created by trees on their land, just as the municipal responsibility to maintain streets and sidewalks did not absolve the landowner in *Brown* and *Plesko* of liability for the injuries caused by their trees.

¶ 19. The Frankes insist, however, that the municipal duty "to maintain streets, highways and related signage" is "non-delegable," and even if delegable, neither the County nor the Town had delegated any duty to landowners to maintain the visibility of traffic signs on adjacent public roads. They rely on *Hagerty v. Village of Bruce*, 82 Wis. 2d 208, 214, 262 N.W.2d 102 (1978), where the court said:

> Therefore, it is stated that even though a municipality, by ordinance, may impose upon the individual landowner some duty with respect to the care or maintenance of a public way, the individual is not

> burdened with the responsibility for injuries arising from his neglect to perform the duty in the absence of any statutory provision to that effect because the primary duty to maintain public ways may not be delegated.

(Citation omitted.) The *Hagerty* case, however, involved the long-established public policy in Wisconsin, enunciated in both statutes and common law, that places the primary responsibility for the maintenance of sidewalks, and in particular, the removal of snow and ice from sidewalks, on municipalities. *See, e.g., Walley v. Patake*, 271 Wis. 530, 74 N.W.2d 130 (1956); Wis. Stat. § 66.0907. We emphasize again that the liability of the Frankes on the present facts is in no way premised on their failure to maintain the "streets, highways and related signage" adjacent to their home, but on their failure to eliminate a safety hazard created by a tree growing in their yard. We conclude, therefore, that *Hagerty* is not helpful on the present facts.

¶ 20. The Frankes also seek to rely on another "sidewalk case," *Hei v. City of Durand*, 22 Wis. 2d 101, 125 N.W.2d 341 (1963), which we conclude is similarly unavailing. The plaintiff in *Hei* suffered injuries when she "tripped over an abrupt rise in a city sidewalk located in front of the Pepin county courthouse." *Id.* at 101. The city cross-complained against the county, alleging that the sidewalk defect arose from the growth of roots of an adjoining tree, and that the county, "by owning and maintaining a tree on its property so close to a sidewalk as to cause an upheaval, created a dangerous condition which constituted a nuisance." *Id.* at 104. The court framed the question before it as "whether an abutting property owner is liable for injuries resulting from the dangerous condition of a sidewalk which was caused by the natural growth of

954

the roots of a tree located on his property," *id.* at 102–03, and answered "no."

¶ 21.　The Frankes argue that the dangerous condition to users of the adjoining town and county roads in this case also arose from the "natural growth" of a tree on their property, and they, like Pepin County in the *Hei* case, may not be held liable for resulting harm to those users. We disagree. The supreme court in *Hei* distinguished *Brown* and *Plesko*, which we have discussed above, noting that in those cases, "the question of keeping a street or highway in repair is not involved." *Id.* at 104. A key factor in the court's reasoning in *Hei* was that "[e]ven if the county had removed the roots there is nothing in the record to indicate that the sidewalk would then have settled into a level position." *Id.* at 105. By contrast, here, the record shows that the stop sign was sturdy, erect and in good condition, and had the tree been sufficiently trimmed up on the roadside, there would have been no impediments to its visibility. In short, unlike in *Hei*, we are not dealing with a road or sidewalk defect that only the responsible municipality could correct. The Frankes argue that they "had no control over the stop sign," but the relevant point is that it was the branches of their tree, not the County's stop sign, that created the hazard to the traveling public.[8]

---

[8] The court also discussed the element of "control" in *Hei*, noting that in *Brown* and *Plesko*, the trees and limbs which injured passers-by were "within the control of the property owner," and not the municipalities. *Hei v. City of Durand*, 22 Wis. 2d 101, 104, 125 N.W.2d 341 (1963). In *Hei*, however, the actual injury-producing defect—a buckled sidewalk—was within the city's control: "Under the statutes, the city has the duty of maintaining public sidewalks, and abutting property

¶ 22. Next, the Frankes argue that, under Wisconsin case law, "adjacent landowners have no common law duty for injury caused by the natural conditions of that person's land to people using streets and highways." Again, we disagree, noting initially that the diseased or decaying tree limbs involved in *Brown* and *Plesko* also constituted "natural conditions." There was no claim in either case that the landowners had actively created the safety hazards. Both growth and decay are "natural" phenomena which can render a tree hazardous to public safety. *See Brown*, 199 Wis. at 589–90 ("[W]hen such a tree, through *decay or because of any change in the structure of the tree* or in its surroundings, becomes a menace to the safety of those who travel the street, such tree may become a nuisance which will render the owner of the adjoining lot liable for injuries which may be caused to those who lawfully use the streets." (emphasis added)).

¶ 23. The Frankes, however, point to the comments of this court and the supreme court in *Wells v. Chicago & North Western Transportation Co.*, 91 Wis. 2d 565, 283 N.W.2d 471 (Ct. App. 1979), *aff'd,* 98 Wis. 2d 328, 296 N.W.2d 559 (1980), in support of their claim for immunity for injuries stemming from "natural conditions" on their land. In that case, we were called upon to decide whether the violation of a statute requiring landowners to cut brush and trees to ensure proper visibility at railroad grade crossings created civil liability. We concluded that it did not, and in so

owners cannot be subjected to liability for defects existing in a sidewalk over which they have no control." *Id.* at 106. The Frankes make no claim that they had "no control" over the tree in question, or that there were any legal obstacles to their trimming the portion of the tree which extended into the town road right-of-way.

doing, we found "the common law policy sound" that "a landowner incurs no liability for physical harm caused by the natural condition of his land to those outside his property." *Id.* at 569–70. Our goal, however, was to determine whether the legislature intended a violation of the statute "to entail civil liability." *Id.* at 569.

¶ 24. We did not consider whether, on the facts of the case, the landowners had violated a common law duty by permitting a hazard to public safety to continue, deciding only that the statutory violation relied upon by the plaintiff did not create civil liability. On review of our decision in *Wells*, the supreme court specifically noted that "[t]he parties have not raised as an issue in this case whether the failure to cut and trim is negligence under the common law." *Wells*, 98 Wis. 2d at 329. The court determined that it should focus its inquiry into the legislature's intent regarding civil liability for violations of the statute on "the conditions existing in 1889 [when the provision was first enacted] to identify the problems which the legislature was attempting to address and the means available to the legislature to address them." *Id.* at 336. The court then noted that in 1889, the "generally accepted rule of common law was that an owner . . . had . . . no civil liability for physical harm caused to persons using a public highway by the natural condition of the land." *Id.* at 337–38.

¶ 25. In a lengthy footnote, however, the court described more recent refinements of or exceptions to the rule, including the acknowledgment in RESTATEMENT (SECOND) OF TORTS (1964) that landowners in urban areas, and perhaps even in rural areas, may incur "liability to persons using a public highway for physical harm resulting from . . . failure to exercise reasonable care to prevent an unreasonable risk of

harm arising from the condition of trees on the land near the highway." *Id.* at 338 n.6. The court again emphasized in its concluding paragraphs that it was *not* deciding whether "the failure to cut and clear is negligence under the common law." *Id.* at 344. Accordingly, we conclude that since the question of the Frankes' civil liability under the statute at issue in *Wells* (or any similar statute) is not present in this case, its holding is of little relevance here, and that the common law duty described in *Brown* and ratified in *Plesko* is controlling.

¶ 26. Finally, the Frankes also seek to avail themselves of the public policy exclusion from liability set forth in *Walker v. Bignell*, 100 Wis. 2d 256, 301 N.W.2d 447 (1981), for municipalities with respect to "keeping areas adjacent to every highway intersection clear of visual obstructions." *Id.* at 266. As we discuss below with respect to the County's liability, we conclude that the rationale of *Walker* does not apply when a stop sign, and not just passing traffic, is obstructed from motorists' view. Because we are not persuaded that either the County or the Town, the ostensible direct beneficiaries of the holding in *Walker*, may escape liability as a matter of law, we find nothing in *Walker* that presents a public policy basis for relieving the Frankes of liability on the present facts.

¶ 27. Neither are we persuaded that there is "no logical stopping point" if liability is imposed on the Frankes in this case, as they also contend. Neighbors of the Frankes or passers-by, who might become aware of the safety hazard posed by the tree branches obscuring the stop sign in this case, incur no greater risk of having liability imposed on them than do persons who observe that a tree on another's land is diseased or decaying under the holding in *Brown*. And, even

though the trial court noted that the Frankes' buildings also obscured the view of motorists on Ledge Road of crossing traffic on CTH "Z," the Frankes' potential liability for Smith's injuries is premised on the tree branches obscuring the stop sign, not the placement of their buildings. Landowners whose buildings are placed at or beyond allowable setbacks from highway right-of-way lines have nothing to fear from our present holding.[9]

### III.

¶ 28. We turn next to the County's duty, or lack thereof, to ensure that the visibility of the stop sign was not obscured by the tree on the Frankes' property. The County concedes that it had "a duty to maintain the traffic sign itself," but contends that it "had no duty to cut the branches of the tree which obstructed [the] view of the arterial stop sign." The County's first argument is that the supreme court has declared, as a matter of public policy, that municipalities may not be held liable for "failure to cut vegetation," and that that holding is controlling on the present facts. *See Walker v. Bignell*, 100 Wis. 2d 256, 266, 301 N.W.2d 447 (1981). We disagree.

¶ 29. The plaintiffs in *Walker*, like Smith, were injured in a traffic accident at the intersection of a town road and a county highway. They sued both municipal entities, alleging that "the areas adjacent to [the

---

[9] We note that the trial court's comments regarding the Frankes' buildings had to do with the issue of causation—that is, whether the obscured view of the stop sign was a substantial factor in causing the accident which injured Smith. The court simply noted that given other impediments to the visibility of crossing traffic on CTH "Z," the visibility of the stop sign was "of utmost importance" to safety at the intersection.

county and town roads] were so overgrown with weeds
that the view of the intersection by approaching drivers
was obstructed and that the two municipal defendants
and their agents were negligent in failing to keep those
areas free from visual obstructions." *Id.* at 258. The
trial court dismissed the municipal defendants on sum-
mary judgment, we affirmed, and the supreme court
agreed with our conclusion that neither the county nor
the town had a common law duty to "cut roadside vege-
tation to assure unobstructed vision at intersections."
*Id.* at 258–59.[10]

¶ 30. In its analysis of the common law issue, the
supreme court first distinguished affirmative duties to
perform specific acts from the general duty imposed on
all persons "to exercise reasonable care whenever it is
foreseeable that one's conduct may cause harm to
another." *Id.* at 263 (citing *Coffey v. City of Milwaukee,*
74 Wis. 2d 526, 536, 247 N.W.2d 132 (1976)). The court
concluded that the latter definition of "duty" applied to

---

[10] The supreme court reversed and remanded, however, on
the question of the municipalities' liability under WIS. STAT.
§ 80.01(3), which requires that "highway authorities . . . shall
remove, cut or trim or consent to the removing, cutting or
removal of any tree, shrub or vegetation in order to provide
safety to users of the highway." *Walker v. Bignell,* 100 Wis. 2d
256, 273, 301 N.W.2d 447 (1981). The supreme court's recogni-
tion of potential municipal liability under WIS. STAT. § 80.01(3)
on the facts of *Walker* is not at issue in the present case. The
court concluded that civil liability for a municipality's violation
of the statute was limited to "highway lands acquired after June
23, 1931" and "where there has been affirmative conduct on the
part of the highway authorities to plant vegetation for beautifi-
cation or erosion control purposes [or to maintain existing
vegetation for those purposes]." *Id.* at 273. Smith's claim
against Dodge County and Leroy Township is not premised on
§ 80.01(3).

the plaintiffs' claims against the municipalities, and that the existence or not of a duty was, in actuality, "a question of policy." *Id.* at 265. It then declared, "as a matter of public policy, municipalities should not be exposed to common law liability" for failing to cut vegetation obscuring motorists' vision at highway intersections:

> Exposure to such liability would, we feel, place an unreasonable and unmanageable burden upon municipalities such as the defendants herein, not only in terms of keeping areas adjacent to every highway intersection clear of visual obstructions at whatever intervals are necessitated by the vicissitudes of Wisconsin's climate, but also in terms of the potential for significant financial liability owing to the unfortunate propensity of motorists to have intersection accidents. In addition, because the height and density of vegetation would become a factor in nearly every intersection accident case, municipalities would inevitably be drawn into considerably more litigation, with its attendant costs and demands. To require these defendants to do battle with roadside vegetation under penalty of liability for common law negligence would be to place upon them a burden they should not be made to bear.

*Id.* at 266.

¶ 31. We agree with Smith, and with the trial court, however, that the public policy considerations which led the supreme court in *Walker* to relieve municipalities of civil liability for failure to cut vegetation to maintain visibility at intersections should not be extended to circumstances where a traffic control sign, and not just general visibility at the intersection,

is obscured. The County has concluded that a stop sign should be placed at the location in question to control traffic and ensure the safety of motorists at the intersection of Ledge Road and CTH "Z." The decision to erect a stop sign, once made, carries with it the responsibility to ensure that the sign is properly installed and maintained, and we conclude, the responsibility to ensure that it remains visible to the motorists whose conduct the sign was intended to control.

¶ 32. The supreme court concluded in *Naker v. Town of Trenton*, 62 Wis. 2d 654, 215 N.W.2d 38 (1974), that a complaint alleging that "brush and trees" had obscured a stop sign was sufficient to survive a motion to dismiss made by the municipality responsible for the intersection. *Id.* at 656–57. The court explained that while the town had no duty to erect the sign, " 'having done so it was incumbent upon it to properly maintain the sign as a safety precaution to the traveling public.' " *Id.* at 657 (quoting *Firkus v. Rombalski*, 25 Wis. 2d 352, 358, 130 N.W.2d 835 (1964)). The supreme court did not cite or discuss *Naker* (or *Firkus*) in *Walker v. Bignell*, 100 Wis. 2d 256, 301 N.W.2d 447 (1981). We conclude, therefore, that the court's holding in *Naker*, that a municipality's failure to trim foliage obscuring a stop sign is "actionable," was not affected by its holding in *Walker*. *See Foss v. Town of Kronenwetter*, 87 Wis. 2d 91, 102, 273 N.W.2d 801 (Ct. App. 1978) ("[T]he supreme court has held that . . . negligence in failing to prevent foliage from obscuring a stop sign was actionable." (citing *Naker*, 62 Wis. 2d at 657)).

¶ 33. We also conclude that the presence of the stop sign significantly alters the weight of the policy factors considered in *Walker*. Whether municipalities should incur potential liability for visual obstructions at "every highway intersection," is not at issue on the

present facts, as it was in *Walker*. *See Walker*, 100 Wis. 2d at 267. Neither will "the height and density of vegetation . . . become a factor in nearly every intersection accident case" because of our holding. *See id.* at 266. The County presumably knows where it has placed its signs, and it already undertakes periodic inspections of them. At issue in this case is not whether some unspecified amount of additional trimming might improve general visibility at the intersection, but whether certain vegetation substantially obscured a specific fixed object at the intersection. We thus conclude that the public policy concerns expressed in *Walker* do not justify shielding the County from liability for failing to ensure that a stop sign it has placed remains visible to motorists approaching the intersection.

■

¶ 34. Support for not precluding the County's liability may also be found in the statutes. WISCONSIN STAT. § 349.065 directs that "[l]ocal authorities shall place and maintain traffic control devices upon highways under their jurisdiction to regulate, warn, guide or inform traffic." The statute further requires that the "design, installation and operation or use" of traffic control devices shall be accomplished in accordance with the Department of Transportation's manual regarding same. *Id.*; *see* WIS. STAT. § 84.02(4)(e). That manual, in turn, provides in relevant part as follows:

> All traffic signs should be kept in proper position, clean and legible at all times.
> To insure adequate maintenance, a suitable schedule for inspection, cleaning and replacement of signs should be established. Employees of the highway department, police and other governmental employees whose duties require that they travel

on the highways should be encouraged to report any damaged or obscured signs at the first opportunity.

Special attention and necessary action should be taken to see that weeds, trees, shrubbery and construction materials do not obscure the face of any sign.

U.S. Dep't of Transp., MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, Section 2A–30 (1971). Given these directives, we are again persuaded that the County should not be shielded on public policy grounds from liability for a tree-obscured stop sign. To the contrary, the public policy of our state, as expressed in the cited statutes and the standards officially adopted under them, is that when a municipality places traffic control signs, it must take steps to ensure that the signs remain in a state of repair and visible to motorists.

¶ 35. Accordingly, we decline to extend the rationale of *Walker* to the present facts.[11]

¶ 36. The County next cites WIS. STAT. § 86.03(3) and (4) as authority for the proposition that it was not empowered to trim the tree in question, inasmuch as the tree was situated in the right-of-way of the Town's road, but it was not within the County's highway right-of-way.[12] The County suggests that, because its only

---

[11] We do not address whether WIS. STAT. § 349.065, and related statutes and regulations, in and of themselves provide a basis for the civil liability of municipalities to injured motorists on the present facts. That question is not before us. We rely on these statutes and regulations only to the extent which they reflect public policy regarding a municipality's responsibility for maintaining the effectiveness of traffic control devices.

[12] WISCONSIN STAT. § 86.03(3) authorizes adjoining landowners to plant trees along highways, provided they have "the approval of the public authority maintaining the highway."

recourse would have been to contact the Town or the Frankes to cut the branches which obscured the stop sign, the County should be absolved from liability for not having done so. We reject this argument as well. First, as Smith points out, "county highway committees" may "enter private lands with their employees to remove weeds and brush," WIS. STAT. § 83.015(2)(a), so it is not altogether clear that the County was "powerless" to act on its own to trim the tree branches which obscured its stop sign. Moreover, even if it could only act by requesting or requiring others to trim the offending branches, we conclude it had a "duty" to do so, given our conclusion that public policy does not provide a basis for relieving the County from liability for failing to maintain the visibility of its traffic sign.

¶ 37. The remainder of the County's arguments address whether disputes of material fact exist which preclude summary judgment in favor of Smith on the issue of its liability for his injuries. We defer consideration of those arguments to a subsequent section of this opinion.

## IV.

¶ 38. Finally, we address whether the Town of Leroy should be excluded, as a matter of law, from liability for its failure to remove obstructions to the view of the stop sign created by the branches of the Frankes' tree. The Town first points to WIS. STAT. § 349.065, which we have discussed, and to WIS. STAT.

---

That subsection and subsection (4) prohibit persons other than the landowner and the public authority from cutting, trimming or removing trees "growing within the highway." Thus, according to the County, the statutes "prohibit[ ] Dodge County from trimming branches on the tree" at issue.

§ 83.025,[13] in support of its contention that "[o]nly the county, not the town, by statute, has the duty to maintain the sign which it placed at the intersection free from obstructions." It acknowledges that the town board is charged with "the care and supervision of all highways in the town," and, like the county highway committee, it is empowered to "[e]nter any private lands . . . for the purposes of removing weeds and brush." WIS. STAT. § 81.01(10). But, in an argument similar to the Frankes' "but for the stop sign" proposition, the Town claims that liability for failing to maintain visibility of the sign must begin and end with the entity responsible for the sign itself.[14] We reject the Town's claim that the statutes we have discussed, which place responsibility for maintenance of the stop sign on the County, establish a public policy that prohibits an action against the Town for a hazard to motorists created by a condition present in the Town's right-of-way.

¶ 39. We note first that a statute the Town has cited, WIS. STAT. § 81.01, makes town boards responsible for the "care and supervision of all highways in the town." Another provision in Chapter 81 grants a right to recover damages from any "town, city or village" for injuries sustained on account "of the insufficiency or

---

[13] WISCONSIN STAT. § 83.025(2) provides, among other things, that "[t]he county trunk system shall be marked and maintained by the county."

[14] In this regard, the Town's argument is the complement of the County's argument that its duty begins and ends with ensuring that the sign is upright and in good repair, and that the County cannot be held liable for obstructions to the sign's visibility created by a tree and its branches that are situated outside of the County's right-of-way.

want of repairs of any highway which any town, city or village is bound to keep in repair." WIS. STAT. § 81.15. We recognize that the Town's liability in this case may not be premised on the latter statute, given that a "highway defect" is not alleged. *See Weiss v. City of Milwaukee*, 79 Wis. 2d 213, 225, 255 N.W.2d 496 (1977) (noting that "[t]raditionally," municipal liability under the statute "has been interpreted to refer to physical defects existing on the traveled surface of the highway"). Nonetheless, the cited provisions of Chapter 81 indicate public policies which obligate towns to maintain and supervise town roads, and which empower them to remove impediments to safe travel occasioned by vegetation growing along town roads. *See* § 81.01(10). If there is a public policy rationale for absolving the Town from potential liability on the present facts, it lies elsewhere, and not in the statutes cited by the Town.

¶ 40. The Town, like the other two defendants, would have us conclude that *Walker v. Bignell*, 100 Wis. 2d 256, 301 N.W.2d 447 (1981), provides that rationale. Again we disagree. We emphasize once more that the danger here was created by the obscuration of the stop sign, not merely of the intersection. Although the potential burdens on municipalities described in *Walker* support absolving the Town from liability for any failure to remove vegetation which reduces visibility at an unmarked intersection, we conclude that the presence of the stop sign, regardless of which municipal entity placed it, alters the public policy equation. Once the responsible entity, in this case, the County, has seen fit to control traffic at an intersection for the safety of motorists on both intersecting roadways, we do not believe an onerous burden results from requir-

ing both the Town and the County to bear responsibility for ensuring that the sign remains visible to motorists.

¶ 41. Finally, we note that the Town presents an argument that is similar to one made or implied by each of the other defendants—that the County has a "non-delegable" duty to ensure that its stop sign is visible to motorists. (The argument is identical to one advanced by the Frankes; the County's variant is that the Town's duty to supervise its highways cannot be delegated to the County.) Our conclusion that one of the defendants "had a duty" to remove the branches which obscured the stop sign, however, does not require us to also conclude that neither of the others had the same duty. The Town cites *Hagerty v. Village of Bruce*, 82 Wis. 2d 208, 262 N.W.2d 102 (1978), upon which the Frankes also rely. As we have discussed, however, *Hagerty* is one of the "sidewalk cases," which rest in part on the legislative imposition on municipalities of the responsibility to repair and maintain public sidewalks. To repeat, the hazard in this case did not arise from a damaged or fallen traffic sign, or from a defect existing in a sidewalk or paved roadway. It, literally, stemmed from a tree in the Frankes' lawn, whose branches extended into the Town's right-of-way, obscuring the visibility of the County's stop sign.

■■■

¶ 42. We agree with Smith that "the settled rule at common law" is that each of the defendants, whose "concurring" acts or omissions combine to cause injury to the plaintiff, bears liability for the damages which result. *See Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 535–36, 252 N.W.2d 721 (1934). Although recent revisions to WIS. STAT. § 895.045 may alter the extent of an individual defendant's liability for a plain-

tiff's damages, the fact remains that the liability of one defendant does not preclude the liability of the others on the present facts.[15] The concept of a "non-delegable" duty, whatever its applicability in other circumstances, has no application here. As we have discussed, each of the defendants "had a duty" to eliminate the hazard created by the branches which obscured the stop sign because there is no public policy basis on which to exclude any of them from liability for their failure.

## V.

¶ 43. Having determined that none of the three defendants is precluded, as a matter of law, from liability for failing to remove the tree branches which obscured the stop sign, we now consider whether the trial court correctly concluded on summary judgment that each defendant was indeed liable to Smith. That is, based on the matters submitted on summary judgment, viewed most favorably toward each of the defendants, can we conclude that there are no issues of material fact, and that each of the defendants is liable to Smith as a matter of law? The defendants argue, variously, that the trial court erred by injecting the notion of "nuisance" into its analysis, or that it confused the issues of nuisance and negligence, or simply that it could not determine the existence of a nuisance on summary judgment. We disagree.

---

[15] WISCONSIN STAT. § 895.045(1) provides in part that "[t]he liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person." *See Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶¶ 26–30, 244 Wis. 2d 758, 628 N.W.2d 833 (discussing § 895.045(1) and concluding it does not apply to strict product liability claims).

¶ 44. As we have stated, in our de novo review of the record on summary judgment, we conclude, as did the trial court, that *Brown v. Milwaukee Terminal Railway Co.* provides the proper analysis for determining whether the defendants are liable to Smith on the present facts. The supreme court concluded in *Brown* that a tree, which "because of any change in [its] structure . . . becomes a menace to the safety of those who travel the street," is a nuisance. *Brown*, 199 Wis. at 589. The court recognized that trees are not inherently dangerous or noxious, and we acknowledge here that none of the defendants actively created the dangerous condition which arose from the uncontrolled growth of the tree branches which obscured the stop sign. Neither fact, however, precludes the existence of a nuisance or the defendants' liability for maintaining it.

¶ 45. A defendant's liability for maintaining the nuisance is established when the plaintiff makes the following showing:

> [W]here danger results, not from the planting of the tree, but through subsequent changes for which the defendant is not responsible, it is essential to liability that it be shown either that the defendant knew of the danger incident to the maintenance of the tree or that such condition had existed for such length of time that, by the exercise of ordinary care, the defendant ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff.

*Id.* at 590. We thus agree with Smith that a defendant's negligence is largely irrelevant when it comes to determining whether a nuisance exists. It is the degree of danger or interference presented, not the degree of care

or lack of care, that determines whether a nuisance is present. *See, e.g., Walley v. Patake*, 271 Wis. 530, 541, 74 N.W.2d 130 (1956). And, if a nuisance is determined to have existed, the inquiry then becomes whether those who are asserted to be liable for maintaining it knew or ought to have known of its existence. *See Brown*, 199 Wis. at 589.

¶ 46. We thus address two questions in this part of our opinion: Were there any disputed issues of material fact to preclude a determination on summary judgment that the roadside tree branches created a nuisance; and if not, were there any disputed facts regarding the issue of whether each of the defendants knew or ought to have known of the condition? We conclude that the answer to both questions is no.

¶ 47. In broad terms, a nuisance "is an unreasonable . . . use of property that interferes substantially with the . . . health [or] safety . . . of another or others." *State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 517, 311 N.W.2d 650 (1981). As we have discussed, the supreme court has declared that a tree can become a nuisance when changes in its structure or in its surroundings renders it a "menace to the safety of those who travel the street." *Brown*, 199 Wis. at 589. We have viewed the photographs and videotape contained in the record which show the tree in the condition it was in on the afternoon of the accident, from the vantage point of motorists approaching the stop sign on Ledge Road at its intersection with CTH "Z." We agree with the trial court's assessment that these exhibits convincingly demonstrate that the stop sign was largely, if not completely, obscured from the view of drivers approaching the intersection in the direction Diane Smith was traveling. *See Chart v. General Motors Corp.*, 80 Wis. 2d 91, 111–12, 258 N.W.2d 680

(1977) (noting that photographs are "physical evidence" which "must control" if in conflict with oral testimony).

¶ 48. The question then becomes whether any of the defendants submitted evidentiary materials which place in dispute what the photographs and video clearly purport to show. Neither the County nor the Town point to any items in the record that place in dispute whether the tree branches substantially obscured the stop sign from the view of motorists approaching the intersection from the west on Ledge Road.[16] The Frankes argue, however, that the photos and video were taken an hour-and-a-half after the accident, and that at the time of the accident, "wind and lack of shade may have created greater visibility." One who opposes summary judgment, however, may not rely on a conjecture that evidence in support of the motion "may" not be accurate or reliable. The opponent's obligation is to counter with evidentiary materials demonstrating there is a dispute—in this case, as to whether the stop sign was obscured by the tree branches at the time of the accident. *See Moulas v. PBC Prods., Inc.*, 213 Wis. 2d 406, 410–11, 570 N.W.2d 739 (Ct. App. 1997), *aff'd*, 217 Wis. 2d 449, 576 N.W.2d 929 (1998) ("[O]nce the motion is made and demonstrates the support required by the statute, the

[16] In fact, a town supervisor, who was a neighbor of the Frankes, testified at a deposition that the morning after the accident he and the town chairman visited the scene and "took that drive, and we both decided that that tree would have to be trimmed." He was then asked, "it was your judgment and that of the chairman's that the extent of growth of the Frankes' tree near or in front of the stop sign did pose a hazard, correct?" to which he replied "yes."

opponent . . . must advance specific facts showing the presence of a genuine issue for trial.").

¶ 49. The Frankes next argue that their deposition testimony shows that a dispute exists as to whether the tree branches obscured the stop sign. The cited testimony from Mrs. Franke is that she felt the sign "was partially but not totally" obstructed by the tree branches. Mr. Franke testified that prior to the accident he knew that the branches, with leaves on them, had "grown out partially in front of the stop sign." He also said that "you could always see part of the stop sign at all times," such as its silhouette and some of its letters, qualifying the statement, however, with the comment, "if you know it's there." The Frankes also point to the testimony of their neighbor, a town supervisor, who had approached the intersection from the west "a dozen times" in the four weeks prior to the accident. He said that he "never had trouble seeing there," but also acknowledged that he knew the sign was there.

¶ 50. We conclude, as did the trial court, that the testimony on which the Frankes rely does not create a factual dispute that the stop sign was significantly obscured from the view of a driver coming from the west on Ledge Road. Testimony from persons who are well familiar with the intersection, and who know of the presence of the stop sign, to the effect that it was only "partially obscured" and that they "had no trouble" seeing it, does not undermine the fact demonstrated by the photos and video: that the sign was largely obscured from the view of a motorist approaching the intersection from the west who was not familiar with the intersection and did not know the sign was

there.[17] In short, the defendants can point to no objective, unequivocal evidence in the record on summary judgment which places in dispute the fact that the roadside tree branches were a nuisance, in that they endangered the safety of motorists on Ledge Road by obscuring the stop sign at CTH "Z."

██

¶ 51. Smith suggests that we may end our analysis of liability at this point. He claims that because he established the existence of a nuisance, all of the defendants are liable to him because "all those with duty relative to the nuisance are liable." We disagree—there is an additional step. Under *Brown*, a defendant is not liable for the existence of a hazardous condition on facts such as those before us "unless the circumstances are such as to charge [a] defendant with notice of the existence of the danger." *Brown*, 199 Wis. at 589. We thus consider whether the record on summary judgment permits us to conclude, as a matter of law, that each of the defendants "knew of the danger incident to the maintenance of the tree or that such condition had existed for such length of time that, by the exercise of ordinary care, the defendant ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff." *Id.* at 590.

¶ 52. Smith alternatively contends that we, like the trial court, must conclude as a matter of law that each of the defendants had actual or constructive notice of the hazardous condition created by the tree branches obscuring the sign because the condition did

---

[17] Mr. Franke was asked in his deposition whether he would "agree that the stop sign now is much more easy to see than it was on July 21, 1996." He answered "yes," adding, "Well, now there's nothing in the way." See also footnote 16, above.

not arise "suddenly," or even "over the course of several days." He points to the arborist's affidavit which sets forth the affiant's "opinion that the obstruction to the stop sign (during time of foliage) existed for at least the spring and summer of 1996 and the foliage season of 1995." From this fact, which Smith claims is uncontroverted in the record, he argues that the Frankes' actual knowledge may reasonably be inferred, given their proximity, their daily exposure to the condition and their awareness that the sign was "partially" obscured. With respect to the Town and the County, Smith's claim is that, given the time period in the arborist's affidavit, each entity ought to have known of the danger by pursuing more rigorous traffic safety inspections, in particular, by conducting them during the "foliage season."[18]

¶ 53. Our first inquiry is thus whether the defendants submitted any evidence that would place in dispute whether the tree branches substantially obscured the stop sign from approximately May 1 through the date of the accident on July 21, 1996 (the "spring and summer" or "foliage season"), as the arborist averred. They did not.

¶ 54. The Frankes point again to their testimony and their neighbor's, that the sign was only "partially"

---

[18] Smith also claims the record establishes that each defendant should have acted to correct the condition, which was a simple task. We agree that only notice or knowledge is arguably in dispute on the present record. There is no dispute that none of the defendants acted before the accident to correct the dangerous condition, and no defendant claims that correction of it would have been impossible or even difficult. We deem these matters conceded, leaving only the defendants' knowledge or notice, and as we discuss below, causation, to be determined by the court or a jury.

obscured prior to the accident, but none of the defendants cite any evidence in the record tending to show that the condition of the tree and its roadside branches had come about more recently than what the arborist opined. We note again the obligation of a party opposing summary judgment to submit materials on summary judgment to counter the submissions of the moving party. It is not enough to simply claim that the moving party's submission should be disbelieved or discounted. Here, an affidavit from another expert to the effect that the tree's branches could have very recently reached the point where the sign was obscured, or testimony from the Frankes or other lay witnesses familiar with the intersection that such was indeed the case, would be sufficient to raise a jury issue on the duration of the hazardous condition's existence. Nothing of the sort is in the record.[19]

---

[19] The Frankes' only argument regarding the arborist's affidavit is that a jury would not be bound by the expert's opinion, *see* WIS JI—CIVIL 260, so the court should not have relied on it. We disagree. *See Schaidler v. Mercy Med. Ctr. of Oshkosh, Inc.*, 209 Wis. 2d 457, 475, 563 N.W.2d 554 (Ct. App. 1997) (party opposing summary judgment may not prevail "merely by discounting the expert testimony put forth" by the movant). It is true that "[a]ffidavits in support of a motion for summary judgment must contain evidentiary facts, of which the affiant has personal knowledge," and that affidavits made on "information and belief," or those which allege "ultimate facts" or conclusions of law, must be disregarded. *Hopper v. City of Madison*, 79 Wis. 2d 120, 130, 256 N.W.2d 139 (1977). These exclusions, however, are to remove from a court's consideration on summary judgment purported "facts" that would not be admissible at trial. *See Leszczynski v. Surges*, 30 Wis. 2d 534, 538–39, 141 N.W.2d 261 (1966) (noting that affidavits in support of summary judgment must contain "evidentiary facts . . . [which means] evidence by the affiant as would be admissible on the trial").

■

¶ 55. We conclude, therefore, that it is undisputed that the hazardous condition at issue existed for a period of at least two to three months prior to the accident. Whether that is a sufficient period of time to impute constructive notice of the condition to the persons or entities having a duty to correct it, presents a question of law:

> Constructive notice is neither notice nor knowledge. It is "the mere trademark of a fiction." In order to promote sound policy, the legal system attributes notice of a fact to an owner or employer and treats it as if it had actual notice or knowledge of the fact, although in truth it did not.
>
> The general rule is that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation. The length of time viewed as sufficient varies according to the nature of the business, the nature of the defect, and the public policy involved.

No claim is made that the arborist would not be permitted to testify at trial to the conclusions set forth in his affidavit. Thus, the "evidentiary fact" that the tree branches had obscured the stop sign for at least two to three months must be "taken as true if not contradicted by other opposing affidavits or proof." *Id.* at 539. The only other defendant to address the arborist's affidavit in argument is the County, and its statement actually supports Smith's position: "[T]he testimony of the arborist who said the tree growth was such that it would have been able to be seen for one or two years and was a condition that existed for at least the spring and summer of 1996 . . . creates an inference that someone should have trimmed the offending tree branches."

*May v. Skelley Oil Co.*, 83 Wis. 2d 30, 36–37, 264 N.W.2d 574 (1978) (footnotes omitted).

![black bar]

¶ 56. We are satisfied that the hazardous condition presented by the tree branches existed for "a sufficient length of time to allow" the County, the Town, and the Frankes "to discover and remedy the situation." *Id.* at 36. The Town and County acknowledged that their annual or biannual road and sign inspections were conducted in April and November, essentially during the "non-foliage" season in Wisconsin. At other times, each entity simply relies on employees or citizens to report hazardous highway conditions or damaged or missing road signs. It is eminently foreseeable in Wisconsin that summer foliage may obscure the visibility of traffic signs that are readily visible in early spring or late fall. We conclude that, the tree branches in question having obscured the stop sign for some two to three months prior to the July 21st accident, the municipal defendants "ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff." *Brown,* 199 Wis. at 590; *see also Merriman v. Cash-Way, Inc.*, 35 Wis. 2d 112, 116, 150 N.W.2d 472 (1967) (" '[T]he policy and the safety of the public forbid a person to deny knowledge while he is so dealing as to keep himself ignorant.' " (citation omitted)).

![black bar]

¶ 57. The same analysis and conclusion apply to the Frankes. This was not a tree on a remote parcel of their land. It was situated in the yard of their farm residence, and they acknowledged daily contact with the intersection in question. Moreover, although the Frankes both testified to a belief that the sign was only "partially" obscured, their testimony arguably consti-

tutes an admission of actual knowledge that the sign's visibility was impaired. We thus have no difficulty concluding that the Frankes knew or ought to have known that the branches of their tree posed a hazard to traffic at the intersection by obscuring the stop sign.

## VI.

¶ 58. Finally, we consider whether the issue of causation may be decided in Smith's favor on the present summary judgment record. In doing so, we are mindful of the following:

> "[I]f the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is for the jury should be firmly adhered to and the court should not assume to answer such question. . . ."

*Wills v. Regan,* 58 Wis. 2d 328, 339, 206 N.W.2d 398 (1973) (citation omitted).[20] We conclude that disputed reasonable inferences from the facts of record preclude a determination on summary judgment that the obscuration of the stop sign was a cause of the accident in which Smith was injured.

---

[20] The quoted passage specifically addresses the standard for deciding certain motions after verdict. We conclude, however, that its delineation of the proper roles of the court and jury provides guidance as well in our inquiry whether the factual issue of causation may be determined in Smith's favor "as a matter of law" on the present record.

¶ 59. The "test" for whether the tree-obscured stop sign "caused" Smith's injuries is whether the hazardous condition "was a substantial factor in producing the injury," and it is a "question of fact that may be decided as a matter of law only when reasonable factfinders could not differ on the issue." *Wagner v. DHSS*, 163 Wis. 2d 318, 328, 471 N.W.2d 269 (Ct. App. 1991). Because more than one "substantial factor" can contribute to the infliction of injuries, there can be more than one cause of an injury-producing accident. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660 (1979). Thus, we agree with Smith that even though Diane Smith may have been driving negligently at the time of the accident, and her negligence may also have been a substantial factor in causing the accident, these facts alone would not preclude a court from determining on summary judgment that the tree-obscured stop sign was also *a* cause of the accident. We conclude, however, that we cannot make that determination on the present record.

¶ 60. "The well-known purpose of summary judgment is 'to avoid trials where there is nothing to try.'" *Transportation Ins. Co., Inc. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 289, 507 N.W.2d 136 (Ct. App. 1993) (citation omitted). Here, even though the trial court concluded the defendants each had a duty to abate the nuisance created by the tree branches, that each knew or ought to have known of the hazardous condition, and that the condition was a cause of the accident, there was still "something to try"—the apportionment of liability for Smith's injuries.[21] The trial court noted in its supplemental decision:

_____

[21] *See Huss v. Yale Materials Handling Corp.*, 196 Wis. 2d 515, 534–35, 538 N.W.2d 630 (Ct. App. 1995) ("The apportion-

It was never the Court's intention . . . to foreclose the jury from the opportunity of hearing the facts and deciding for themselves how to apportion such liability [for Smith's injuries]. In particular, it was never the Court's intent to deprive [the defendants] of the opportunity to factor in any negligence that they might find on the part of Diane Smith. . . . [The court's conclusion on summary judgment] does not mean that the defendants should not be allowed to put in evidence that there may have been some small patches of red visible through the trees on the day in question, if they can prove that. They should also not be foreclosed from putting in evidence that Diane Smith may have failed to maintain a proper lookout or was negligent in some other respect.

Thus, even if we were to affirm the trial court's ruling on causation, the jury would hear whatever evidence any of the parties may be able to present which bears on the issue of causation.

¶ 61. There is evidence in the summary judgment record that Diane Smith had consumed alcohol immediately prior to the accident, that she was "sightseeing" and not paying attention to road signs, and that she had not seen the "Stop Ahead" sign, which was not obscured on the day of the accident. She told an investigating officer that she had consumed "4–5 beers" during the two hours prior to the accident, and in response to the question, "[a]re you under the influence of an alcoholic beverage at this time," she responded "I don't know I suppose." She also testified at a deposition as follows:

ment of negligence is ordinarily a question for the jury. . . . [It] is a matter that rests within the sound discretion of a jury based upon the inferences it draws from the evidence presented. . . ." (citations omitted)).

Q If you had been observing the signs along the highway and so forth, you would have seen that Stop Ahead sign, wouldn't you?

A I suppose.

 . . . .

Q If you did miss it, it's because you weren't paying attention—you weren't paying attention, is that true?

A I wasn't paying attention and I didn't see that sign, right.

¶ 62. We conclude that reasonable fact finders could differ on the issue of whether Diane Smith's actions were the sole cause of the accident, that is, whether the tree-obscured stop sign was a substantial factor contributing to the accident. Given the evidence of her alcohol consumption and inattentive driving, a jury could conclude that Diane would not have seen the stop sign in time to stop at the intersection, even if it had been fully visible, just as she had not seen the "Stop Ahead" sign which preceded it.[22]

¶ 63. We do not mean to suggest that, if the evidence at trial is essentially what was presented on summary judgment, a jury verdict assigning all or nearly all causation to the obscuration of the stop sign would not be sustainable. We conclude only that reasonable inferences from the materials submitted on summary judgment might also permit a jury to assign total responsibility for the accident to driver negligence. *See Goff v. Seldera*, 202 Wis. 2d 600, 609, 550

---

[22] It appears from the record that any traffic citations issued to Diane Smith relating to the accident were subsequently dismissed. The fact that Diane was not convicted of any criminal or traffic offenses would not preclude a finding that negligent driving on her part was the sole cause of the accident.

N.W.2d 144 (Ct. App. 1996) ("Any reasonable doubt as to the existence of a genuine issue of material fact is resolved against the party moving for summary judgment."). Moreover, we are mindful that all evidence relevant to the issue of causation will be presented to the jury, regardless of whether both causation and apportionment, or only the latter issue is tried. We thus conclude that both questions should be put to the jury. As the supreme court has noted:

> "Prosser, Law of Torts (2d ed.), p. 281, sec. 50, states that '*where reasonable men could not differ* as to whether the defendant's conduct was, or was not, a substantial factor in producing the result' the determination of the question of causation is for the court; but 'in cases *where reasonable men might differ—which will include all but a few of the cases* in which the issue is in dispute at all—*the question is one for the jury*.' (Emphasis supplied.)"

*Wills*, 58 Wis. 2d at 340 (citation omitted).

## CONCLUSION

¶ 64. We affirm those portions of the appealed order which denied summary judgment to the defendants, and those which granted partial summary judgment in favor of Smith determining that (1) each defendant had a duty to correct the hazardous condition created by the tree branches obscuring the stop sign; (2) the condition constituted a nuisance; and (3) each of the defendants knew or ought to have known of the condition. Remaining to be tried, therefore, are the issues of whether the hazardous condition was a cause of Smith's injuries; whether Diane Smith was negligent, and if so, whether her negligence was a cause of the accident; if necessary, the apportionment of causa-

tion between the hazardous condition and Diane's negligence; and damages.[23]

¶ 65. As the trial court observed, the question of apportionment of liability for damages among the three defendants, should the jury assign some or all responsibility for Smith's injuries to the hazardous condition they failed to correct, is premature and may be decided post-verdict. The trial court noted in its decision that Smith had argued that the circumstances here are analogous to those addressed in WIS. STAT. § 81.17, which assigns "primary liability" for highway defects which are "caused by, or arise from, the wrong, default or negligence . . . of any person, or private corporation" to that person or corporation, with municipal entities bearing liability only if damages cannot be collected from the "primary" wrongdoer. Smith renews this argument on appeal. The trial court stated it would decline to make

> a final ruling in this regard and would allow the jury to compare the individual negligence of each of these three principal defendants along with any other parties whose negligence is supported by the facts at trial. After the verdict is in, the Court can reconsider and make a final decision on whether or not the prioritizing of WIS. STAT. § 81.17 should take place.

¶ 66. We agree that the question of how liability should be apportioned or prioritized among the three defendants must await the trial outcome, and we do not

---

[23] We are uncertain from the record and arguments before us whether any issue regarding Smith's contributory negligence will be tried. If so, his negligence and causation, as well as Diane's, will be determined by the jury, and if appropriate, the apportionment will be among three factors instead of two.

address the issue further in this opinion. We note, however, that under our analysis, the basis of the defendants' potential liability is grounded in the law of nuisance: the defendants' failure to correct a hazardous condition of which they ought to have known. Diane Smith's conduct on the day of the accident has nothing to do with responsibility for the hazardous tree branches. We agree with Smith, therefore, that it may not be appropriate to have the jury combine its consideration of what factor or factors contributed to the accident with a consideration of which defendant was "most" responsible for the hazardous tree branches.

¶ 67. The Civil Jury Instructions Committee suggests that, in products liability cases, courts submit a verdict form which requires apportionment of causal "negligence" between "the product" and "the plaintiff." *See* WIS JI—CIVIL 3290. The committee also suggests, where appropriate, that a separate question inquiring "how much or to what extent . . . each defendant named in the question [e.g., manufacturer, dealer, seller] contributed to produce the injury caused by the defective product." *Id.* This approach may be suitable on the present facts. That is, the jury might be asked to apportion responsibility for the accident between the obscured stop sign and Diane Smith's negligence (and possibly Smith's contributory negligence, see footnote 23). If any party believes the jury should also be asked to determine each defendant's proportional responsibility for the existence of the hazardous condition, and the trial court concurs, a second and separate apportionment question could be included in the special verdict for that purpose.[24]

---

[24] See *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶¶ 28–30, 244 Wis. 2d 758, 628 N.W.2d 833, where the supreme court discusses WIS JI—CIVIL 3290, and endorses the commit-

¶ 68. Finally, the County also asks us to review and reverse the trial court's order denying it leave to amend its pleadings to include a defense of discretionary immunity. We decline to do so. In its petition, the County requested leave to appeal only the order of July 6, 2000, relating to the disposition of summary judgment motions. The supporting arguments in its petition address only the summary judgment issues we have discussed above, and the County made no mention in its petition of the denial of its motion for leave to amend its answer. Although an appeal as of right from a final order or judgment brings before us "all prior nonfinal judgments, orders and rulings adverse to the appellant," WIS. STAT. RULE 809.10(4), the same is not true of a discretionary appeal of a nonfinal order. We conclude that the issue of the trial court's denial of the County's motion for leave to amend its answer is not before us.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

tee's recommendations regarding special verdict questions in strict product liability cases, notwithstanding WIS. STAT. § 895.045(1), which the court held does not apply in those cases.